751 So.2d 343 (1999)
John PACENTE
v.
Bobby P. JINDAL, Secretary of the Louisiana Department of Health and Hospitals.
No. 99-CA-0601.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1999.
*344 Richard Robinson, Advocacy Center for the Elderly and Disabled, New Orleans, Attorney for John Pacente.
Stephen R. Russo, Karla M. Coreil, Louisiana Department of Health & Hospitals, Baton Rouge, Attorneys for Bobby P. Jindal, Secretary of the Louisiana Department of Health & Hospitals.
Court composed of Judge WILLIAM H. BYRNES, III, Judge CHARLES R. JONES and Judge DENNIS R. BAGNERIS, Sr.
JONES, Judge.
Defendant/appellant, State of Louisiana through the Department of Health and Hospitals (DHH), appeals the judgment of the trial court finding that the plaintiff, John S. Pacente, was eligible for Medicaid benefits covering long term care. Following a review of the record, we affirm the judgment of the trial court.

FACTS
On December 6, 1976, John S. Pacente purchased from State Farm Insurance Company a Single Premium Deferred Life Annuity in the amount of $144,976.44. On February 3, 1978, Mr. Pacente elected to receive annuity payments from the State Farm annuity in the amount of $871.66 per month, and these benefits would terminate on the date of his death. At the time Mr. Pacente elected to receive the benefits under his State Farm annuity, the annuity had appreciated in value to $149,000.85.
On January 11, 1997, Mr. Pacente was admitted into the Woldenberg Village Nursing Home for long term care due to his deteriorating health. On January 14, 1997, he transferred ownership of the State Farm annuity to his wife, Dorothy Pacente. The transfer contained the following language:
In the event of the death of the above named owner [Dorothy Pacente], payments should be made to John Richard Pacente as successor owner, (sic) for long as the Annuitant lives.
Following Mr. Pacente's transfer of ownership in the State Farm annuity to his spouse, he then submitted an application *345 for long-term care Medicaid benefits to DHH on February 5, 1997. His application was denied because of excess income. Nevertheless, he submitted another Medicaid application on April 7, 1997. The second application was submitted under a Miller Trust, and was subsequently denied.[1] Following the second denial of Medicaid benefits, Mr. Pacente filed for an administrative appeal.
On July 10, 1997, a telephonic hearing was held before the Administrative Law Judge (ALJ). The ALJ addressed all issues regarding both applications considering that there was some confusion as to what application was being appealed. After the hearing, the ALJ upheld the denial of benefits by DHH. On July 30, 1998, DHH issued an administrative decision upholding the denial of benefits on the grounds that Mr. Pacente transferred resources in violation of Medicaid laws and regulations. From this judgment, Mr. Pacente filed a Petition for Judicial Review. The district court reversed the judgment of the ALJ finding that Mr. Pacente was eligible for Medicaid benefits for long-term care. From this judgment, DHH appeals.

VALID TRANSFER OF ASSETS
In its sole assignment of error, DHH contends that Mr. Pacente transferred ownership of his State Farm annuity to his spouse in violation of 42 U.S.C.A. § 1396p(c)(2)(B).[2] DHH contends that the statute proclaims that an individual is ineligible for Medicaid benefits when that individual transfers assets to a spouse or to another for any reason other than for the "sole benefit of the individual's spouse." Thus, DHH argues that the language Mr. Pacente used to transfer the State Farm annuity to his spouse reveals that the transfer was not made for the sole benefit of Dorothy Pacente since Mr. Pacente's son was made successor owner in the event of Mrs. Pacente's death. In addition, DHH argues that the Louisiana Eligibility Manual provides that a transfer of assets is considered to be for the sole benefit of the spouse when no other individual or entity except the spouse in question can benefit from the assets transferred. In the instant case, DHH argues that both Dorothy Pacente and her stepson, John Richard Pacente, would benefit from the State Farm annuity payments.
Mr. Pacente argues that he is eligible for long-term Medicaid benefits because he transferred his ownership interest to his spouse within the specified time period, and he argues that the transfer was made for the sole benefit of his spouse. Mr. Pacente also argues that according to 42 U.S.C.A. § 1396p(c)(2)(B)(I), transfers to an applicant's spouse are permitted without penalty. Further, he argues that the transfer was actuarially sound based upon the life expectancy tables use by DHH in the Louisiana Medicaid Eligibility Manual.[3] Therefore, he argues that DHH's argument that his son, John R. Pacente, may receive a hypothetical benefit from the annuity transfer to Dorothy Pacente should *346 not invalidate the transfer as a whole and subject him to penalties. We agree.
42 U.S.C.A. § 1396p(c)(2)(B)(i) states in pertinent part:
(2) An individual shall not be ineligible for medical assistance by reason of paragraph (1) to the extent that___
(B) the assets___
(i) were transferred to the individual's spouse or to another for the sole benefit of the individual's spouse, (Emphasis added)
Medicaid eligibility is determined by income and resources to the applicant and is provided for those described as "medically needy". 42 U.S.C.A. § 1396a(a)(10)(C). The exceptions to ineligibility were added to prevent impoverishment of the community spouse as a result of qualifying for Medicaid. H.R.Rep. No. 105(II), pt. 2 at 67.
We take judicial notice of the fact that Mr. Pacente was 84 years old at the time he voluntarily transferred his State Farm annuity to Dorothy Pacente, who was 73 years old on the date of the transfer. According to the life expectancy tables used by DHH in the Louisiana Medicaid Eligibility Manual, Dorothy Pacente was expected to live for 13.33 years, whereas, Mr. Pacente's life expectancy was 5.51 years. Thus, we find that the transfer was actuarially sound. However, the central issue before us is whether this transfer was for Dorothy Pacente's benefit alone or was John Richard Pacente also made a beneficiary of the State Farm annuity benefits as well.
At the outset, we note that this issue is res nova for the judiciary of this state as there has been no previous discussion regarding an individual's eligibility for Medicaid benefits when it appears that the individual applying for said benefits transferred his assets to his spouse and possibly someone else. Considering that there are no federal or state cases interpreting the transfer penalty exception in 42 U.S.C.A. § 1396p(c)(2)(B)(i) with regard to Medicaid applications, we will resolve this issue under Louisiana law.
Following our review of the record and the arguments made by both parties in this case, we find that Mr. Pacente's transfer of his State Farm annuity to his surviving spouse is, in essence, equivalent to a donation inter vivos under Louisiana law. According to LSA-C.C. art. 1467, a donation inter vivos (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it. (Emphasis added). For purposes of a donation inter vivos, delivery is defined as relinquishing control or dominion over property and placing it within the dominion of the donee, irrevocably. Dastugue v. Fernan, 95-394 (La.App. 5 Cir. 10/18/95), 662 So.2d 538, 541, citing Brown v. Brown, 93-1105 (La.App. 3 Cir. 3/6/94), 635 So.2d 255, writ denied 94-1667 (La.10/28/94), 644 So.2d 649; Succession of Serio, 597 So.2d 91 (La.App. 4 Cir.1992), writ denied 600 So.2d 677 (La.1992). In order to have a valid inter vivos donation, the will of the donor to give and the actual possession or acceptance by the donee of the property must operate simultaneously, and a determination of whether the donor had the requisite donative intent is reserved for the trier of fact. See Mertens v. Mertens, 96-391 (La.App. 3 Cir. 10/9/96), 688 So.2d 1148, writ denied 96-2716 (La.1/6/97), 685 So.2d 123.
In the case sub judice, the parties do not dispute the fact that Dorothy Pacente voluntarily and willfully accepted the State Farm annuity, that the transfer was actuarially sound or that Mr. Pacente had the requisite intent to relinquish the State Farm annuity to his spouse. However, the heart of the controversy between the parties involves the language Mr. Pacente used to dispose of the annuity benefits in the event he predeceased his wife. This clause is commonly referred to as a suspensive condition.
*347 "A suspensive condition temporarily postpones the enforcement of an obligation until the occurrence of a particular event..." See LSA-C.C. art. 1767; Unkel v. Unkel, 29,728 (La.App. 2 Cir. 8/20/97), 699 So.2d 472. (Emphasis added). Unlike a donation mortis causa where property rights are transferred from the testator to the heir upon death, property rights in a donation inter vivos are transferred from the donor to the donee at the moment of the donee's acceptance or by actual delivery of the donated object. See LSA-C.C. art. 1469. Hence, if the donation does not fall within one of the enumerated exceptions for revocation of donations as stated in LSA-C.C. art. 1559, then ownership of the donated property by the donee begins immediately upon acceptance and the donor retains no authority over the said property. Therefore, the suspensive condition relative to John Richard Pacente would be immaterial considering that Mr. Pacente would not possess any ownership rights in the annuity after the donation is complete.
The irrevocability of the [inter vivos] donation is of paramount importance as it usurps the donor's right to rescind his commitment once the donation is complete. Donations inter vivos of negotiable instruments and items of a commercial nature. 33 Loy.L.Rev. 1053, 1055 (1988). Furthermore, should the donee predecease the donor, the donated property will pass to the donee's heirs or legatees while no interest in the property will revert to the donor. Louisiana's Approach to Gratuitous Inter Vivos Dispositions. 22 Loy. L.Rev. 743. Of these basic ingredients of a donation, the last [the irrevocability of a donation] is the essence of a donation inter vivos. Id.
Accordingly, we find that the suspensive condition relative to Mr. Pacente's son is null because once the inter vivos donation was completed, Mr. Pacente no longer possessed the right to appoint successors for future annuity payments. Having found the suspensive condition to be null and void, we conclude that the transfer at issue does fall within the transfer penalty exception found in 42 U.S.C.A. § 1396p(c)(2). Therefore, we find that Mr. Pacente did validly transfer the annuity to his spouse for her benefit and we also find that he is eligible for Medicaid benefits for long-term care.

DECREE
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.
NOTES
[1] The record does not discuss the second application regarding the Miller Trusts. See Louisiana Medicaid Eligibility Manual § 3259.7(c). Moreover, the second application is not the subject of this appeal; therefore, we will limit our discussion to the denial of the plaintiff's first Medicaid application.
[2] See also Louisiana Medicaid Eligibility Manual § 3258.10(B).
[3] Mr. Pacente also makes reference to the manual distributed by the Federal Health Care Financing Administration, which states that a transfer of assets to an applicant's spouse is proper if the transfer was actuarially sound based on the life expectancy of the individual involved. See HCFA State Medicaid Manual § 3257(B)(6). According to the manual, a transfer is considered actuarially sound when the average number of years of expected life remaining for the individual must coincide with the life of the annuity. If the individual is not reasonably expected to live longer than the guarantee period of the annuity, the individual will not receive fair market value for the annuity based on the projected return. La. Medicaid Eligibility Manual § 3258.9(B).