880 So.2d 918 (2004)
Geraldine W. OUZTS, Plaintiff-Appellee
v.
SECRETARY, LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, Defendant-Appellant.
No. 38,634-CA.
Court of Appeal of Louisiana, Second Circuit.
July 29, 2004.
*919 Neal R. Elliott, Jr., Baton Rouge, for Appellant.
Culpepper & Carroll, PLLC, by Teresa C. Carroll, for Appellee.
Before DREW, MOORE and LOLLEY, JJ.
DREW, J.
The Louisiana Department of Health and Hospitals ("DHH") appeals the district court's reversal of DHH's denial of Medicaid benefits. We affirm.

FACTS
In March of 2001, Geraldine Ouzts entered the Baptist Retirement Center. The next year, an application for Long-Term Care ("LTC") vendor payment benefits under the Louisiana Medicaid Program was made on Mrs. Ouzts' behalf by her husband, John Ouzts, who was acting as her authorized representative. A determination of Mrs. Ouzts' eligibility was then instituted.
The Ouztses owned 59 acres of land in Bienville Parish. Mr. Ouzts inherited 39 of these acres in 1974, and he and Mrs. Ouzts purchased the remaining 20 acres in 1982. All of these acres are contiguous to the family home, and the Ouztses own the mineral rights underlying the property. As home property, these acres were not considered a countable resource under the Medicaid regulations.[1]
At issue are the mineral rights underlying the home property, for which the Ouztses have received royalty checks from companies leasing the mineral rights. The Ouztses argued that because the rights arose from exempt land, they were not to be counted as a resource in determining eligibility for LTC benefits. DHH responded that the value of these mineral rights were to be considered as a resource on the grounds that the rights were real rights and not subject to the exemption. *920 The mineral rights on the 59 acres were valued at $65,744.35 by DHH.[2] The addition of the value of the mineral rights gave the Ouztses resources of $127,743.[3] This amount exceeded the allowed resource limit of $89,280. Accordingly, the Shreveport Regional Medicaid Office of DHH rejected the application. An administrative hearing to review this decision was held before an administrative law judge ("ALJ"), who affirmed the denial of Medicaid eligibility on the grounds that the mineral rights are not part of the exempt family home but are real property rights.
On March 26, 2003, Mrs. Ouzts filed a petition for judicial review. The district court reversed the ALJ decision and remanded the matter to DHH for a redetermination of eligibility. DHH appeals.

DISCUSSION
The Medicaid Program, 42 U.S.C. § 1396, et seq., authorizes federal financial participation in state medical assistance plans that provide funds to persons whose income and resources are insufficient to pay for the cost of necessary medical treatment. Case of Hamner, 427 So.2d 1188 (La.1983); Estate of Messina v. State, Dept. of Health and Hospitals, 38,220 (La. App.2d Cir.3/3/04), 867 So.2d 879.
States that participate in the program are required to institute reasonable standards for eligibility determination that are consistent with the objectives of the assistance program [42 U.S.C. § 1396a(a)(17)(A)], and these standards must consider only resources and income available to the applicant and provide a reasonable method of evaluation of such resources and income [42 U.S.C. § 1396a(a)(17)(B) & (C)]. Hargrove on Behalf of Hargrove v. State, Dept. of Health and Hospitals, 96-1072 (La.App. 1st Cir.3/27/97), 692 So.2d 30, writ denied, 97-1072 (La.6/13/97), 695 So.2d 983.
DHH argues on appeal that the trial court erred in failing to follow the standard of review set forth in La. R.S. 49:964(G), which governs the judicial review of a final decision or order in an agency adjudication. That statute provides:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor *921 on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
When reviewing an administrative final decision in an adjudication proceeding, the district court functions as an appellate court. Once a final judgment is rendered by the district court, an aggrieved party may seek review of same by appeal to the appropriate appellate court. On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Blair v. Stalder, 99-1860 (La.App. 1st Cir.1/31/01), 798 So.2d 132; Eicher v. Louisiana State Police, Riverboat Gaming Enforcement Division, 97-0121 (La.App. 1st Cir.2/20/98), 710 So.2d 799, writ denied, 98-0780 (La.5/8/98), 719 So.2d 51.
DHH contends that the trial court failed to state the enumerated ground under La. R.S. 49:964(G) upon which it based its reversal of the agency determination. Such a statement was unnecessary as the obvious basis for the reversal was the trial court's different interpretation of the Medicaid regulations pertaining to Mrs. Ouzts' eligibility. In other words, the trial court presumably believed that the administrative decision was "affected by other error of law."
The standard of review of a legal determination by DHH has been addressed by the First Circuit:
The question of whether or not the assets comprising the Douglas Sanders Trust can be considered as a resource for determining Douglas' Medicaid eligibility clearly requires an interpretation of statutory law and an application of the law to the facts of this case. Thus, the Department is incorrect in its assertion that its prior resolution of this question constitutes a finding of fact which must be afforded great deference upon review. Appellate review of questions of law is simply review of whether the lower court was legally correct or legally incorrect. Oliver v. Department of Public Safety & Corrections, Office of Alcoholic Beverage Control, 94-1223, p. 3 (La.App. 1st Cir.6/23/95), 657 So.2d 596, 597. If the district court was correct in its determination that the Department's decision to discontinue Medicaid benefits was contrary to law and public policy, its reversal of the Department's decision would be appropriate.
Sanders v. Pilley, 96-0196 (La.App. 1st Cir.11/8/96), 684 So.2d 460, writ denied, 97-0352 (La.3/21/97), 691 So.2d 90.
As La. R.S. 49:964(G) is written, any one of the six bases listed in the statute is sufficient to modify or reverse an agency determination. Blanchard v. Allstate Ins. Co., 99-2460 (La.App. 1st Cir.10/18/00), 774 So.2d 1002, writ denied, 01-0285 (La.3/23/01), 787 So.2d 997.
DHH next contends that the trial court improperly interpreted and applied the applicable Medicaid policy. Section I of the Medicaid Eligibility Manual ("Manual") sets forth the eligibility factors to be considered, and Section I-1634 of the Manual governs the types of resources. Titled "Property," Section I-1634.28 states:
* * *
Ownership of Property
Property can generally be divided into two categories:
 movable property, and
 real property (immovable property).
* * *
Real Property Rights

*922 Count as a resource the value of real property rights. These rights are resources for which separate values can be determined.
Real property rights include:
 surface rights, including timber rights and easements,
 water rights,
 mineral rights to oil, natural gas, gravel, sand, coal, and salt,
 usufruct, and
 remainder interest.
* * *
Types of Property
For Medicaid purposes, property includes:
 business assets,
 home property,
 * * household goods and personal effects, and

 other real property.
* * *
Home Property
Home property includes:
 the house or lot which is the usual residence,
 all contiguous property,
 any other buildings on the home property.
Note:

Definition of Home Property: property in which he or she has an ownership interest and that serves as his or her principal place of residence.
Property is contiguous to the residence if it is touching the residential property (even corner to corner) and is not separated by property owned by others. Property separated by a public right of way, such as a road, is considered contiguous.
* * *
The acreage owned by the Ouztses as separate and community property qualifies as home property that is not counted as a resource because Mr. Ouzts lives there. Section I-1634.28 states, in part:
Do not count home property if the applicant/recipient is living:
 in the home,
 away from home temporarily because of natural disaster, such as flood,
 away from home because of his medical condition, and
 is keeping this home available, and
 intends to use it as his home when his condition permits, or
 away from home, and
 the spouse and/or dependent relative lives there, or
 an SSI eligible has joint ownership of the home, or
 it is income producing and meets the $6,000/6% return rule. Refer to Other Real Property.
Because the mineral rights are under land that is excluded home property, the rights should likewise be excluded. Of course, if the mineral rights were under land that was not home property, they would be a countable resource as "other real property" rights.
A mineral right is an incorporeal immovable. La. R.S. 31:18. The value of the mineral rights in this instance is their capacity to produce income. Section I-1610 of the Manual states, "Resources are cash assets or those assets which can be converted to cash to meet basic needs." The mineral rights would have produced cash in the form of the royalty checks received by the Ouztses.
*923 The income received from the mineral rights was apparently considered by DHH when determining Mrs. Ouzts' eligibility. We note that when Mr. Ouzts completed the Louisiana Medicaid Program application for long-term care, the application contained a section which asked for income information, including "Interest/Dividends/Royalties." (Our emphasis.) Mr. Ouzts wrote that he received approximately $2,200 per month from Cody Energy and Philips Petroleum. The Ouztses ultimately received $47,704.35 in income from the mineral rights in 2002. Moreover, this income from 2002 presumably would have already been reflected in some of the resources counted against them, despite the ALJ's statement in his "summary of the evidence" that the $47,704.35 is "irrelevant in determining the amount of resources." These resources included $1,913.36 in a checking account and $29,095.39 in a savings account, which surely would have included some of the royalty checks already received.
DHH further contends that the mineral rights are a countable resource because the equity value of the home property exceeds the $6,000/6% test. The $6,000/6% Rule provision in Section I-1634.28 states:
If property not excluded as trade or business property produces income at an annual net rate of 6% or more of the equity value, up to $6,000 of the equity value may be excluded.
This is apparently a reference to an earlier provision in Section I-1634.28 which states, in part:
Business Assets (Property Essential For Self-Support)
Effective May 1, 1990, exclude from resources all property used in a trade or business and all property used by an employee in connection with employment as property essential to self support.
However, the $6,000/6% rule would not apply to home property in this instance. As stated earlier, home property is not counted if the applicant is living away from home, and the spouse lives there or it is income producing and meets the $6,000/6% return rule. Accordingly, the home property is excluded because Mr. Ouzts lives there, even if it produces income and runs afoul of the $6,000/6% rule.

DECREE
With costs of $447.31 assessed against The Louisiana Department of Health and Hospitals, the judgment is AFFIRMED.[4]
NOTES
[1] In February of 2002, 4.53 acres were donated to a daughter, but the mineral rights on this tract were reserved. We note that in the Administrative Law Judge's summary of the evidence, he considered all of the 59 acres to be exempt, although he later referred to 54.47 acres as home property in his legal analysis and conclusions.
[2] This amount was reached by multiplying $26,297.74, the royalties received during the first nine months of 2002, by 2.5.
[3] The Ouztses had a checking account with a balance of $1,913.36 as of September 2002, and Mr. Ouzts had additional resources that were valued at $60,085.39.
[4] La. R.S. 13:5112 requires that court costs assessed against a state department are to be expressed in a dollar amount in the appellate court's decree.