895 So.2d 735 (2005)
Mildred Lea SMITH, Plaintiff-Appellee,
v.
STATE of Louisiana DEPARTMENT OF HEALTH AND HOSPITALS, Defendant-Appellant.
No. 39,368-CA.
Court of Appeal of Louisiana, Second Circuit.
March 2, 2005.
Rehearing Denied March 31, 2005.
*737 Neal R. Elliott, Jr., Baton Rouge, for Appellant.
Donald K. Carroll, Oak Grove, for Appellee.
Before BROWN, DREW and MOORE, JJ.
*736 MOORE, J.
The State of Louisiana, through the Department of Health and Hospitals ("DHH"), denied an application for Medicaid and Long Term Care Benefits on grounds that the applicant was the settlor, trustee, and beneficiary of a revocable trust whose value exceeded the maximum resource limit for individuals. Under administrative appeal, an Administrative Law Judge ("ALJ") affirmed the denial of benefits, concluding that the applicant had access to nine Certificates of Deposit ("CDs")in a revocable trust, each valued more than $2,000. The matter was appealed to the Fourth Judicial District Court, Morehouse Parish. Acting in its capacity as an appellate court for administrative decisions, the district court concluded that the trust was irrevocable, reversed the ALJ, and ordered DHH to reprocess and provide Medicaid/Long Term Care Benefits to the applicant. DHH filed this appeal. For the reasons that follow, we affirm the judgment of the district court.

Facts and Procedure
Mildred Lea Smith, age 90, applied to the DHH for Medicaid and Long Term Care ("LTC") Benefits. The application included a verification of Ms. Smith's resources, which disclosed that Ms. Smith owned a checking account in the State Bank of Eldred (Illinois) containing $1,808, and that she is the settlor, beneficiary, and trustee of the Charles Luther and Mildred Lea Smith Trust, holding the nine Certificates of Deposits ("CDs") valued at $311,183.50, established by her and her husband, Charles, in 1998. Charles died in 2002. The application was denied on grounds that Ms. Smith had financial resources exceeding the $2,000 limit for individuals to be eligible for Medicaid/LTC benefits. Specifically, the agency determined that Ms. Smith, as the surviving settlor of a revocable trust, could invade the trust corpus and use the CDs for her care.
Ms. Smith filed an administrative appeal pursuant to La. R.S. 46:107 C. A hearing was held on October 28, 2003, the Honorable Adaora Chukudebelu, Administrative Law Judge, presiding. At the hearing, Ms. Smith's daughter, Ms. Martha B. Glosup, *738 testified that she and her brother approached the State Bank of Eldred in April of 2002 about dissolving the trust for the purpose of caring for their mother, Ms. Smith.[1] A document dated April 10, 2002 entitled "Termination of the Charles Luther and Mildred Lea Smith Trust" is also in the record. This document is signed by Mildred Lea Smith and two witnesses, along with a notarial act in which she acknowledged her signature on the termination document. All the trust beneficiaries, which included Karl Smith, Martha and Felton Glosup, and Karl's children, Marcia Smith and Monica Smith, signed documents ratifying the termination of the trust except the contingent beneficiary, the Carrollton Community Unit School District # 1 ("School Board") in Carrollton, Illinois. The School Board President sent a letter dated October 23, 2003 stating that the School Board would not waive or disclaim its interest in the trust assets and objected to the revocation of the trust. Ms. Glosup also presented documentary evidence, including a letter from a physician, that Ms. Smith was not capable of making informed decisions concerning her estate. Based on this evidence, Ms. Glosup contended that the trust was irrevocable.
The ALJ concluded that the agency appropriately rejected Ms. Smith's application for Medicaid and LTC benefits because her financial resources exceeded the limit of $2,000 for an individual. The ALJ stated that since Ms. Smith is a trustee as well as a settlor of the Trust, she has the legal right to revoke the trust and use the money for her own benefit. She concluded that "the Trust document specifically provides that either settlor may revoke the trust without notifying the beneficiary."
The matter was appealed to the Fourth Judicial District Court, Morehouse Parish, which pursuant to La. R.S. 49:107 C, acts in the capacity of an appellate court for decisions of an ALJ. The district court concluded that the Trust is irrevocable under applicable Illinois law and that Ms. Smith is incompetent and could not personally request that the Trust be altered to help in her care. It further reversed the finding of the ALJ that the Trust provided that the last surviving settlor had the power to revoke the Trust. The district court ordered DHH to immediately reprocess Ms. Smith's application and extend Medicaid/LTC benefits to her.
DHH filed this appeal.

Discussion
The issue in this case is whether the inter vivos trust[2] known as the Charles Luther and Mildred Lea Smith Trust ("Trust") can be considered a resource for purposes of Medicaid/LTC eligibility. DHH contends that under Louisiana law, which it argues is applicable in this case, the Trust is a revocable trust consisting of nine Certificates of Deposit, each of which has a value of more than $2,000. Accordingly, it contends that Ms. Smith is not entitled to Medicaid/LTC benefits.
Counsel for Ms. Smith contends that Illinois law applies to the interpretation of the Trust instrument, and that the Trust is irrevocable under Illinois law. It also contends that Ms. Smith is incompetent, and therefore, she cannot revoke the Trust.

*739 Standard of Review

When reviewing an administrative final decision in an adjudication proceeding, the district court functions as an appellate court. Once a final judgment is rendered by the district court, an aggrieved party may seek review of same by appeal to the appropriate appellate court. On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Maraist v. Alton Ochsner Medical Foundation, 2002-2677 (La.App. 1 Cir. 5/26/04), 879 So.2d 815. Thus, an appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the district court.
The applicable standard of review is set forth in La. R.S. 49:964. Section F of La. R.S. 49:964 provides that a reviewing court is confined to the record established before the agency (except in cases of alleged irregularity in procedure before the agency). Sanders v. Pilley, 96-0196 (La.App. 1 Cir. 11/8/96), 684 So.2d 460; Obafunwa Family v. Appeals Bureau, 93-0820 (La.App. 1 Cir. 4/8/94), 635 So.2d 714, 717. A reviewing court's function is not to weigh de novo the available evidence and to substitute its judgment for that of the agency. Save Ourselves v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1159 (La.1984). Nevertheless, the district court and the court of appeal have the authority to reverse or modify the decision of the agency if substantial rights of the party seeking review have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) manifestly erroneous in view of the reliable, probative and substantial evidence in the record. La. R.S. 49:964 G; Obafunwa Family v. Appeals Bureau, supra.
The question in this case is whether the Trust corpus is an available resource for purposes of qualifying for Medicaid benefits. This requires an interpretation of statutory law, and therefore, it is a question of law subject to appellate review for legal correctness and the prior decision of DHH is not entitled to deference. Sanders v. Pilley, 96,0196 (La.App. 1 Cir. 11/8/96), 684 So.2d 460. Appellate review of questions of law is simply review of whether the lower court was legally correct or legally incorrect. Oliver v. Department of Public Safety & Corrections, Office of Alcoholic Beverage Control, 94-1223, (La.App. 1 Cir. 6/23/95), 657 So.2d 596.

Applicable Law
Congress enacted the Medicaid program in 1965, establishing a cooperative federal-state program in which the federal government reimburses states for a portion of the cost of medical care for needy persons. 42 U.S.C. § 1396 et seq.; Schweiker v. Gray Panthers, 453 U.S. 34, 36, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981). State participation in the program is voluntary, but states choosing to participate must comply with the federal statute's requirements. Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2679, 65 L.Ed.2d 784 (1980). The test for Medicaid eligibility is essentially a needs-based test, with coverage being denied if the applicant exceeds a ceiling in countable assets.
*740 Louisiana's DHH created a Medicaid Eligibility Manual ("Manual") giving effect to the federal statute that establishes the State standards for Medicaid benefits, including eligibility for long term care ("LTC") nursing facilities. (Manual §§ B-100, B-300). Eligibility for LTC vendor payments is specifically based on the applicant's need, calculated on the applicant's resources, including income and certain property. (Manual § H-831.4). The resource limit per individual is $2,000. (Manual § Z-700).
Property held in trust may or may not be considered a resource for purposes of Medicaid eligibility. (Manual § 1634.39). The treatment of trust amounts for purposes of determination of an individual's eligibility for Medicaid under a State plan is governed by the Social Security Act under 42 U.S.C. 1396p(d).[3] Trusts created after August 11, 1993 must be evaluated under the rules established by the Omnibus Budget Reconciliation Act of 1993 ("OBRA 93"). (Manual § 1634.39). The rules applicable to trusts established after August 11, 1993 are found in § 1720 of the Manual, and the rules applicable to trusts established before August 11,1993 are found in § 1710 of the Manual. Since the Trust in this case was established in 1998, OBRA 93 and § 1720 of the Manual apply to the instant Trust.
The decisive issue is whether the Trust in this case is revocable or irrevocable. As a general rule, a revocable trust is a resource for purposes of Medicaid eligibility and an irrevocable trust is not a resource for that purpose. OBRA 93 defines a revocable trust as follows:
Revocable trust  A trust which can under State law be revoked by the grantor. A trust which provides that the trust can only be modified or terminated by a court is considered to be a revocable trust, since the grantor can petition to terminate the trust. A trust which is called irrevocable but which terminates if some action is taken by the grantor is a revocable trust. For example, a trust may require a trustee to terminate a trust and disburse the funds to the grantor if the grantor leaves a nursing facility and returns home. (Emphasis supplied).
This provision specifies that the question of whether a trust is revocable is a question of whether the trust can be revoked under the applicable "State law." DHH contends that Louisiana law should govern this issue because it involves a question of the application of Louisiana Medicaid policy, and that policy would be most seriously impaired if Louisiana law is not applied to the issue. La. C.C. 3515. Accordingly, DHH contends that under La. R.S. 9:2044, the instant trust is revocable. This statute provides that "revocation of a trust, or of a disposition in trust, pursuant to a reservation of such a right, requires the concurrence of all surviving competent settlors, in the absence of a contrary stipulation." Since Mildred Smith is the only surviving settlor, DHH argues the trust is revocable. Furthermore, says DHH, if Ms. Smith's competency is an issue in this regard, La. R.S. 9:2045 provides that "a settlor who has reserved the right to revoke a trust may delegate that right only by an express statement in the trust instrument or in a power of attorney executed in authentic form referring to the trust." Therefore, it states, if Ms. Smith is truly incompetent to revoke the Trust, an existing power of attorney could authorize her to do so.
On the other hand, counsel for Ms. Smith contends that the question is governed *741 by Illinois law because the Trust instrument itself provides:
"The validity of this trust and the construction of its beneficial provisions shall be governed by the laws of the State of Illinois."
The body of this trust consists of nine CDs. It is well-settled that CDs are incorporeal movables. La. C.C. art. 473; Kanz v. Wilson, 96 0882 (La.App. 1 Cir. 11/17/97) 703 So.2d 1331; Succession of Amos, 422 So.2d 605, 608 (La.App. 3 Cir.1982). Generally, La. C.C. art. 3515 controls a conflict of laws analysis pertaining to incorporeal movables such as CDs. Kanz v. Wilson, supra. La. C.C. art. 3515 provides:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
The primary issue in this case, however, is whether Ms. Smith is entitled to Medicaid benefits and that issue turns on whether the Trust is revocable, not the nature of the Trust body. The Trust in question was created in Illinois under Illinois law. The settlors to the Trust specified that Illinois law would be applied to construe the trust's provisions. In Hilliard v. Marshall, 91 F.Supp.2d 916 (W.D.La.1999), the trust instrument stated that Texas law would govern the validity of the Trust, but if the Trust situs was moved to another state, that state's law would govern its other provisions. The federal district court held that even if Louisiana law was applicable to the inter vivos trust executed in Texas, Louisiana would apply the law of Texas, which had a greater interest in insuring trust's validity when determining propriety of form.
In this instance, there are strong policy reasons for Louisiana's Medicaid rules, which implement federal policy, to govern a Medicaid eligibility claim. On the other hand, Louisiana law is not well-suited to deal with certain aspects of Common Law property issues such as joint tenancy, life estates and so on involved in this Trust. Hence, this case presents a depecage situation in which one or two issues may be governed by the law of another state, and other issues governed by the law of Louisiana. La. C.C. art. 3515 comment (d). This situation calls for an issue-by-issue analysis in which the law of the state implicated is applied to each issue.
We therefore conclude that Louisiana law and policy in § 1720 of the DHH Medicaid Eligibility Manual, which is Louisiana's implementation of federal law set out in OBRA 93 and 42 U.S.C. 1396p(d), supplies the criteria for determining Medicaid eligibility. Louisiana law is applicable to all issues in this case except the issue of whether the Trust is revocable. Like the court in Hilliard, supra, which concluded under a Louisiana conflict of laws analysis that Texas Law applied to questions regarding the validity of the trust because the trust provided that Texas Law would apply to questions of the trust's formation, we believe that Illinois law governs questions concerning the validity of the Trust and its "beneficial provisions," including the provisions regarding the right of the settlors to revoke the Trust. However, *742 even if we accepted the DHH's argument that Louisiana law should govern interpretation of this instrument, we do not believe that the outcome would change.

The Settlors' Right to Revoke the Trust
The dispute regarding interpretation of the Trust instrument in this case largely involves two apparently conflicting provisions in the document. The instrument provides:
"As long as both settlors live, either settlor may revoke the Charles Luther and Mildred Lea Smith Trust in writing, at any time, without notifying any beneficiary."
And,
"Upon the death of the surviving settlor, this Trust shall become irrevocable."
The first provision can be construed to mean that either Charles Smith or Mildred Smith could revoke the trust without notifying their children or any other beneficiary as long as they (Charles and Mildred) are both alive, while the second provision implies that the last surviving settlor can revoke the trust. Since Charles and Mildred established the Trust with their own community assets, presumably they wanted to be able to revoke the trust during their lifetime to get to the principal if they so wished. However, they did not require joint action, perhaps because one of them might become incapacitated. Other provisions in the trust indicate that each settlor/trustee/beneficiary has the right of survivorship, which also indicates that this was a joint tenancy for life.
Although there is no express provision that states that "either settlor may revoke the Trust provided that the beneficiaries are notified," we can perhaps deduce that this is also intended in the Trust if we read the instrument so as to give effect to both provisions quoted above.[4] Although the first provision appears to conflict with the second provision with respect to the requirement that both settlors must be living for revocation of the trust, instead, if we read the proviso, "as long as both settlors are alive" to refer only to the "no-notification to beneficiaries" part of the sentence, then the second provision will not be contradictory. In other words, the death of a settlor does not terminate the right of the surviving settlor to revoke the trust, but does require notice to the beneficiaries. This is perhaps because when one parent/settlor dies, there is a possibility that the surviving spouse might come under undue influence from an outsider or perhaps become incompetent to manage his or her affairs. By requiring that the surviving settlor give notice to the beneficiaries (namely, the children), the children could go into court and assert that the surviving spouse is under undue influence or some other incapacity.
We need not make this determination, however. Although this reading of the instrument implies that a surviving settlor has the power to revoke the Trust with notice to the beneficiaries, our research has revealed that the Trust appears to be irrevocable on the ground of Ms. Smith's apparent incompetency.

Mildred Smith's Incompetence
DHH has argued that if Ms. Smith is incompetent, Ms. Glosup may exercise a power of attorney and revoke the trust. Although we have found no Illinois cases on point, our research has revealed that the rule at Common Law is that a guardian of an incompetent person does *743 not have the power to revoke a trust for the ward unless such power is specially provided to a guardian in the trust. 53 ALR 4th 1299. Some jurisdictions will allow revocation with court approval, or if expressly provided for in the power of attorney. Id.; In the Matter of the Guardianship of Lee, 982 P.2d 539 (1999 OK Civ.App. 50). However, in those jurisdictions where the issue has been addressed, the authority appears uniform that "[i]n the absence of express direction to the contrary, the power to revoke is personal to the settlor, when reserved to him, and does not pass to his successors in interest on his death, nor is it transferable by him." Bogert, The Law of Trusts and Trustees § 1000 at 322 (2d Ed.1962); Guardianship of Lee, supra; Weatherly v. Byrd, 566 S.W.2d 292, 293 (Tex.1978); Webb v. St. Louis County National Bank, 551 S.W.2d 869, 878 (Mo.App.1977); Matter of Schroll, 297 N.W.2d 282, 284 (Minn.1980). Matter of Marital Trust under John W. Murphey and Helen G. Murphey Trust, 169 Ariz. 443, 819 P.2d 1029, 1030 (App.1991). See also, e.g., Jones v. Clifton, 101 U.S. 225, 11 Otto 225, 25 L.Ed. 908 (1879). Thus, a trust reserving solely to a settlor the power to revoke becomes irrevocable upon the settlor's incapacity, even with the execution of an otherwise general, durable power of attorney, where the trust and power evince the settlor's intent that the revocation power be personal to the settlor. Kline By and Through Kline v. Utah Dept. of Health, 776 P.2d 57, 63 (Ut.App.1989).
The record before us has undisputed evidence that Ms. Smith is incompetent. The Trust does not provide that a guardian or attorney in fact may act in place of the settlor to revoke the Trust. There has been no court appointment of a guardian or curator, and there has been no court determination that the Trust may be revoked under Illinois law by a guardian, curator, or attorney in fact acting for Ms. Smith. Accordingly, until such actions are taken and the appropriate determinations are made, we conclude that the Trust is irrevocable.

Conclusion
For these reason, the judgment of the district court is affirmed.
AFFIRMED.

Appendix I
42 USC 1392 p(d) provides, in pertinent part:
(d) Treatment of trust amounts
(1) For purposes of determining an individual's eligibility for, or amount of, benefits under a State plan under this subchapter, subject to paragraph (4), the rules specified in paragraph (3) shall apply to a trust established by such individual.
(2)(A) For purposes of this subsection, an individual shall be considered to have established a trust if assets of the individual were used to form all or part of the corpus of the trust and if any of the following individuals established such trust other than by will:
(i) The individual.
(ii) The individual's spouse.
(iii) A person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or the individual's spouse.
(iv) A person, including any court or administrative body, acting at the direction or upon the request of the individual or the individual's spouse.
(B) In the case of a trust the corpus of which includes assets of an individual (as determined under subparagraph (A)) and assets of any other person or persons, the provisions of this subsection shall apply to the portion of the trust attributable to the assets of the individual.
*744 (C) Subject to paragraph (4), this subsection shall apply without regard to 
(i) the purposes for which a trust is established,
(ii) whether the trustees have or exercise any discretion under the trust,
(iii) any restrictions on when or whether distributions may be made from the trust, or
(iv) any restrictions on the use of distributions from the trust.
(3)(A) In the case of a revocable trust 
(i) the corpus of the trust shall be considered resources available to the individual,
(ii) payments from the trust to or for the benefit of the individual shall be considered income of the individual, and
(iii) any other payments from the trust shall be considered assets disposed of by the individual for purposes of subsection (c) of this section.
(B) In the case of an irrevocable trust 
(i) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income 
(I) to or for the benefit of the individual, shall be considered income of the individual, and
(II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c) of this section; and
(ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c) of this section, and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date.
(4) This subsection shall not apply to any of the following trusts:
(A) A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.
(B) A trust established in a State for the benefit of an individual if 
(i) the trust is composed only of pension, Social Security, and other income to the individual (and accumulated income in the trust),
(ii) the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter, and
(iii) the State makes medical assistance available to individuals described in section 1396a(a)(10)(A)(ii)(V) of this title, but does not make such assistance available to individuals for nursing facility services under section 1396a(a)(10)(C) of this title.
(C) A trust containing the assets of an individual who is disabled (as defined in section 1382c(a)(3) of this title) that meets the following conditions:
*745 (i) The trust is established and managed by a nonprofit association.
(ii) A separate account is maintained for each beneficiary of the trust, but, for purposes of investment and management of funds, the trust pools these accounts.
(iii) Accounts in the trust are established solely for the benefit of individuals who are disabled (as defined in section 1382c(a)(3) of this title) by the parent, grandparent, or legal guardian of such individuals, by such individuals, or by a court.
(iv) To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State plan under this subchapter.
(5) The State agency shall establish procedures (in accordance with standards specified by the Secretary) under which the agency waives the application of this subsection with respect to an individual if the individual establishes that such application would work an undue hardship on the individual as determined on the basis of criteria established by the Secretary.
(6) The term "trust" includes any legal instrument or device that is similar to a trust but includes an annuity only to such extent and in such manner as the Secretary specifies.
APPLICATION FOR REHEARING
Before BROWN, PEATROSS, DREW, MOORE, and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] The record is not clear in what capacity Ms. Glosup and her brother attempted to dissolve the trust as co-trustees, or whether Ms. Glosup was acting on behalf of her mother as settlor.
[2] An inter vivos trust is a trust created during the lifetime of the settlors, usually for the benefit of settlors. A testamentary trust is created by last will and testament.
[3] See Appendix I.
[4] It is a well-settled rule of construction at Common Law and Louisiana law that "[w]henever possible, construction of a trust instrument will be favored which upholds the validity of the trust and renders the instrument effective." 90 C.J.S. Trusts § 161d, p. 20. Lelong v. Succ. Of Lelong, 164 So.2d 671 (La.App. 3 Cir.1964).