7 So.3d 1 (2008)
Kathryn WILD
v.
STATE of Louisiana, DEPARTMENT OF HEALTH AND HOSPITALS.
No. 2008 CA 1056.
Court of Appeal of Louisiana, First Circuit.
December 23, 2008.
*2 Peter J. Losavio, Jr., Kent S. DeJean, Christopher W. Nielson, Baton Rouge, LA, for Plaintiff-Appellee, Kathryn Wild.
Neal R. Elliott, Jr., Baton Rouge, LA, for Defendant-Appellant, State of Louisiana, Department of Health and Hospitals.
Before CARTER, C.J., WHIPPLE and DOWNING, JJ.
CARTER, C.J.
Defendant, the Louisiana Department of Health and Hospitals (LDHH), appeals the district court's reversal of LDHH's administrative denial of Medicaid benefits to plaintiff, Kathryn Campbell Wild. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
In August 2003, Kathryn Campbell Wild entered the Heritage Manor nursing home in Baton Rouge, Louisiana, due to the progression of Alzheimer's disease. Her husband, Willie E. Wild, Jr., remained in their community home located at 703 Maple Drive in Denham Springs, Louisiana. Allegedly fearing the necessity of an interdiction, Mrs. Wild donated all of her interest in the community home to Mr. Wild as his separate property on September 20, 2003. Also in September 2003, Mr. Wild created a revocable living (inter vivos) trust, which had previously been provided for in an amended and modified trust instrument dated August 29, 2003, wherein Mrs. Wild had donated all of her interest in the assets listed in the couple's original living trust to Mr. Wild. The corpus or principal of Mr. Wild's trust included the Denham Springs home.[1] The revocable *3 trust provided that Mr. Wild was the sole beneficiary and that upon Mr. Wild's death, the trust would become irrevocable. At that point, three of the couple's children would become the beneficiaries. In October 2003, Mr. Wild unexpectedly became ill and was diagnosed with cancer. Mr. Wild died on November 3, 2003.
The next year, on June 2, 2004, Mrs. Wild's daughter, Mary Kathryn Wild Meadors, acting as Mrs. Wild's authorized representative, made an application for Long-Term Care (LTC) vendor payment benefits under the Louisiana Medicaid Program on behalf of Mrs. Wild. LDHH instituted a routine investigation of Mrs. Wild's eligibility status. After gathering information, LDHH determined that Mr. Wild's living trust amounted to a transfer of resources by Mrs. Wild for less than fair market value within a 36-month look-back period. Consequently, LDHH presumed that the transfer was done with the intent to qualify for Medicaid benefits. Based upon that determination, LDHH rejected Mrs. Wild's application for LTC Medicaid benefits. As a penalty, Mrs. Wild was rendered ineligible for LTC vendor benefits for a certain number of months based on the value of the transferred home.
Mrs. Wild timely filed an appeal with LDHH's Bureau of Appeals. An administrative hearing was held before an Administrative Law Judge (ALJ), who eventually affirmed LDHH's denial of Mrs. Wild's request for LTC Medicaid eligibility, essentially rejecting Mrs. Wild's rebuttal claim that Mr. Wild died unexpectedly, shortly after he had established the trust for estate planning purposes.[2] Mrs. Wild timely filed a petition for judicial review in the district court pursuant to the provisions of the Louisiana Administrative Procedure Act, LSA-R.S. 49:950, et seq.[3] A hearing was held on February 25, 2008, after which the district court scheduled further oral argument. On April 21, 2008, the district court signed a judgment reversing the ALJ decision. The district court ruled that Mrs. Wild had successfully rebutted the presumption that Mr. Wild's living trust amounted to a transfer of resources by her for less than fair market value and that it was done with the intent to qualify for LTC Medicaid benefits. It is from this judgment that LDHH appeals.
LDHH argues that the district court erred in reversing the ALJ's ruling upholding LDHH's ineligibility determination, LDHH maintains that Mrs. Wild was ineligible for LTC Medicaid benefits because once the community residence was permanently alienated by Mr. Wild when he transferred it to the trust, the home was required to be counted as a resource, regardless of whether Mrs. Wild could rebut the presumption that it was transferred for purposes other than qualifying for Medicaid. Mrs. Wild counters that LDHH's determination is in direct contradiction with the Louisiana Medicaid Eligibility Manual and the facts in this case, because donating an interest in a home to a community spouse living in the home is *4 not considered a transfer of property for less than fair market value. Mrs. Wild further argues that even if it did constitute a transfer, the facts show that the transfer was done for estate planning purposes. Mrs. Wild wanted to avoid the inevitable and embarrassing interdiction due to her declining health from Alzheimer's disease. Mrs. Wild also maintains that at the time that Mr. Wild created the revocable living trust and placed the home into the corpus of the trust, there was no indication that Mrs. Wild would outlive Mr. Wild, based upon the simple fact that she was sick and he was not. Since Mr. Wild's death was not anticipated at the time of the transfer, Mrs. Wild claims that Mr. Wild's establishment of the revocable living trust did not amount to an alienation of the property for purposes of qualifying for LTC Medicaid benefits.

STANDARD OF REVIEW
The Louisiana Administrative Procedure Act (APA), at LSA-R.S. 49:964 G, governs the judicial review of a final decision in an agency adjudication, providing that:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of the evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
Any one of the six bases listed in the statute is sufficient to modify or reverse an agency determination. Doc's Clinic, APMC v. State ex rel. Dept. of Health and Hospitals, 07-0480 (La.App. 1 Cir. 11/2/07), 984 So.2d 711, 718, writ denied, 07-2302 (La.2/15/08), 974 So.2d 665. The APA further specifies that judicial review shall be conducted by the court without a jury and shall be confined to the record. LSA-R.S. 49:964 F.
When reviewing an administrative final decision, the district court functions as an appellate court. Doc's Clinic, 984 So.2d at 718. Once a final judgment is rendered by the district court, an aggrieved party may seek review by appeal to the appropriate appellate court. LSA-R.S. 49:965. On review of the district court's judgment, no deference is owed by the court of appeal to the factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Doc's Clinic, 984 So.2d at 719; Carpenter v. State, Dept. of Health and Hospitals, 05-1904 (La.App. 1 Cir. 9/20/06), 944 So.2d 604, 608, writ denied, 06-2804 (La.1/26/07), 948 So.2d 174; Maraist v. Alton Ochsner Medical Foundation, 02-2677 (La.App. 1 Cir. 5/26/04), 879 *5 So.2d 815, 817.[4] Consequently, this court will conduct its own independent review of the record in accordance with the standards provided in LSA-R.S. 49:964 G.
This dispute may be analyzed under either LSA-R.S. 49:964 G(5) or (6), because when the issue on review is an administrative agency's evaluation of the evidence and application of law to facts, our review becomes somewhat intertwined. Credibility determinations of evidence are specifically considered as factual questions under LSA-R.S. 49:964 G(6), but the application of the facts to the law at issue is a legal conclusion subject to analysis under LSA-R.S. 49:964 G(5). Carpenter, 944 So.2d at 609.
Because the basic underlying facts are not in dispute in this case, the district court was required to interpret and apply the statutory law to the facts. The question is whether the trust corpus is an available resource for purposes of qualifying for Medicaid benefits. This requires an interpretation of statutory law and, therefore, it is a question of law. Smith v. State Dept. of Health and Hospitals, 39,368 (La.App. 2 Cir. 3/2/05), 895 So.2d 735, 739, writ denied, 05-1103 (La.6/17/05), 904 So.2d 701. We addressed the standard of review of a legal determination by LDHH in Sanders v. Pilley, 96-0196 (La.App. 1 Cir. 11/8/96), 684 So.2d 460, 463, writ denied, 97-0352 (La.3/21/97), 691 So.2d 90, where we stated:
The question of whether or not the assets comprising the ... [t]rust can be considered as a resource for determining... Medicaid eligibility clearly requires an interpretation of statutory law and an application of the law to the facts of this case. Thus, [LDHH] is incorrect in its assertion that its prior resolution of this question constitutes a finding of fact which must be afforded great deference upon review. Appellate review of question[s] of law is simply review of whether the lower court was legally correct or legally incorrect. If the district court was correct in its determination that [LDHH's] decision to discontinue Medicaid benefits was contrary to law and public policy, its reversal of [LDHH's] decision would be appropriate. (Citations omitted.)
Accordingly, we must examine the pertinent statutory law and apply that law to the facts to determine if the district court's reversal of LDHH's ineligibility determination was legally correct in this case.

LAW AND ANALYSIS
The Medicaid Program authorizes federal financial participation in state medical assistance plans that provide funds to persons whose income and resources are insufficient to pay for the cost of necessary medical treatment, care, and services. 42 U.S.C. § 1396, et seq.; Sanders, 684 So.2d at 464; Ouzts v. Secretary, La. Dept. of Health and Hospitals, 38,634 (La.App. 2 Cir. 7/29/04), 880 So.2d 918, 920. States that participate in the program are required to institute reasonable standards for eligibility determination that are consistent with the objectives of the assistance program. 42 U.S.C. § 1396a(a)(17)(A). These standards must consider only resources and income available to the applicant and provide a reasonable method of evaluation. 42 U.S.C. *6 § 1396a(a)(17)(B) & (C); Hargrove on Behalf of Hargrove v. State, La. Dept. of Health and Hospitals, 96-1072 (La.App. 1 Cir. 3/27/97), 692 So.2d 30, 31-32, writ denied, 97-1072 (La.6/13/97), 695 So.2d 983. An individual is entitled to Medicaid assistance if the criteria established by the state where the individual resides are fulfilled. Sanders, 684 So.2d at 464.
LDHH created the Louisiana Medicaid Eligibility Manual (MEM) to set forth standards for Medicaid eligibility determinations, including benefits for LTC nursing facilities in Louisiana. Smith, 895 So.2d at 740. Eligibility for LTC vendor payments is specifically based on need, calculated by evaluating income and resources available to the applicant. Estate of Messina v. State, La. Dept. of Health and Hospitals, 38,220 (La.App. 2 Cir. 3/3/04), 867 So.2d 879, 882. If resources are greater than the Supplemental Security Income resource limit, the applicant is ineligible for LTC Medicaid benefits.[5]Id. Property held in trust may or may not be considered a resource for purposes of Medicaid eligibility. Smith, 895 So.2d at 740.
Section I of the Louisiana Medicaid Eligibility Manual (MEM) sets forth the eligibility factors to be considered, and Section I-1634 governs types of resources. Pursuant to MEM I-1671, LDHH must consider all transfers that occurred anytime during or after the 36-month period before the Medicaid application was filed.[6] Transfers of resources include the establishment of trusts, as well as the sale, purchase, trade, exchange, or giving away of property. MEM I-1671. Transfers of resources for less than fair market value are presumed to be for the purpose of qualifying for Medicaid benefits. MEM I-1671 and MEM I-1673. However, in all cases, applicants shall be offered the opportunity to rebut the presumption that a transfer was made to reduce resources in order to qualify for Medicaid by providing evidence that the transfer was solely for some other purpose. MEM I-1673 and MEM I-1674.
Home property is not considered if the applicant is living away from home and the spouse lives in the home. MEM I-1673. Accordingly, Mrs. Wild argues, and we agree, that the home property was excluded since she was living in a nursing home while Mr. Wild lived in the community home. Likewise, when Mrs. Wild transferred her interest in the home to her spouse as his separate property, Mrs. Wild maintains that this was an exception to the transfer of assets penalty provisions according to MEM I-1673, MEM I-1674, and MEM I-1720. Furthermore, MEM I-1720 provides that the date of transfer for a trust is considered to be the date the trust was established. However, LDHH used the date the trust was recorded in the public records, approximately eight months after the trust was established, as the date of transfer. LDHH's position is that when Mr. Wild transferred the home into a trust instrument that became irrevocable at his death, and the beneficiaries under the trust were the couple's children rather than Mrs. Wild, the home became a "transferred resource" that LDHH considered to be made by Mrs. Wild, citing MEM I-1666 and MEM I-1720.
*7 After a thorough review of the record and relevant MEM sections, we find no error in the district court's reversal of the ALJ's finding that LDHH properly rejected Mrs. Wild's application for LTC Medicaid benefits. Mrs. Wild successfully rebutted the presumption by showing that Mr. Wild's living trust was established for estate planning purposes to prevent the necessity of interdicting Mrs. Wild, rather than the purpose of qualifying for Medicaid. The record contains evidence supporting these facts, but contains no evidence of any other intent. Mr. Wild was the sole beneficiary of the living trust and he had the ability to revoke the trust at any time prior to his death. Mr. and Mrs. Wild's daughter, Mrs. Meadors, testified before the ALJ that Mrs. Wild transferred all of her resources to Mr. Wild because of her rapid decline resulting from Alzheimer's disease. She also testified that Mrs. Wild fully expected Mr. Wild to continue to care for her as he had always done. According to their daughter, Mr. and Mrs. Wild were trying to avoid having Mrs. Wild declared incompetent through an interdiction process, which they perceived to be extremely embarrassing. Therefore, according to the Wilds' daughter, the transfers and trusts were simply estate planning tools which benefitted Mr. Wild by making it easier for Mr. Wild to access the assets necessary to care for Mrs. Wild.[7]
The record supports the fact that Mr. Wild was in good health at the time the trust was established in September 2003; therefore, Mr. and Mrs. Wild had no reason to anticipate that Mr. Wild would die or that Mrs. Wild would ever be in necessitous circumstances. Almost eight months after Mr. Wild died, Mrs. Wild applied for LTC Medicaid benefits and the trust instrument was recorded. Contrary to the mandate of MEM I-1720, which requires that the date of transfer for a trust is considered to be the date the trust was established, LDHH incorrectly focused on the date of recordation of the trust as the date of transfer when making the eligibility determination. In effect, LDHH and the ALJ ignored the clear requirement of MEM I-1720 in determining the date of transfer.
Because the revocable trust was established at a time when Mr. Wild was not sick and did not anticipate his death, there is no evidence of any intent to permanently alienate the property for Medicaid eligibility purposes. Mr. Wild could have revoked the trust at any time prior to his death; thus, the home was an available resource for meeting the needs of Mr. and Mrs. Wild. Remarkably, the LDHH representative acknowledged in her testimony before the ALJ that the transfer of the house to Mr. Wild was allowed as long as he kept the house in his possession for his care or the care of Mrs. Wild. Looking at the transfer as of the date the trust was established as required by MEM 1-1720, it is clear that the transfer did not make Mrs. Wild ineligible for LTC Medicaid benefits because there is no evidence that the transfer was made with the intent to qualify for LTC Medicaid benefits. We therefore find that the record supports the district court's conclusion that Mrs. Wild rebutted the presumption. Accordingly, we conclude the district court did not err in reversing the ALJ's decision to uphold LDHH's ineligibility determination.

CONCLUSION
For all of the above-outlined reasons, we affirm the April 21, 2008, district court *8 judgment which reversed the administrative decision. Costs in the amount of $2,861.32 are assessed against the Louisiana Department of Health and Hospitals.
AFFIRMED.
DOWNING, J. concurs and assigns reasons.
DOWNING, J, concurs and assigns reasons.
I agree with the result and generally agree with the analysis. I write to address a misstatement regarding the applicable standard of review. In St. Martinville, L.L.C. v. Louisiana Tax Com'n, 05-0457, p. 4 (La.App. 1 Cir. 6/10/05), 917 So.2d 38, 41-42, and its predecessors, this court explained why an appellate court must give deference to a trial court's factual findings in an administrative review pursuant to the Louisiana Administrative Procedure Act, La. R.S. 49:964, as follows:
The Louisiana legislature enacted Acts 1997, No. 128, § 1, effective June 12, 1997, to amend paragraph G(6) to make the trial court a fact finder who weighs the evidence and makes its own conclusions of fact by preponderance of the evidence. Accordingly, we "defer to the trial court's factual determinations and use a manifest error standard of review where the legislature has empowered it with the function of fact finding," while giving due deference to the agency's credibility determinations. La. R.S. 49:964 G(6). (Citations omitted.)
See also Lirette v. City of Baton Rouge, 05-1929, p. 5 (La.App. 1 Cir. 10/6/06), 945 So.2d 40, 44, writ denied, 06-2659 (La.1/8/07), 948 So.2d 129.
Even so, the majority concurs with the trial court's factual determinations. Specifically, it concluded that the district court did not err in reversing the ALJ's decision to uphold LDHH's ineligibility determination. I fully agree, therefore, with the result reached by the majority and with the analysis except insofar as stated here.
NOTES
[1] The schedule of assets incorporated in the Willie E. Wild, Jr. living trust document included other assets that are not relevant to this appeal since LDHH only considered the community home in its ineligibility determination.
[2] The procedural background for the appeal process was complicated in this case. There were actually two hearings held before the ALJ. After the first hearing, the ALJ ordered LDHH to reconsider Mrs. Wild's rebuttal claim, because LDHH had prematurely notified the Bureau of Appeals of Mrs. Wild's appeal. The subsequent ALJ decision on the merit s, denying Mrs. Wild's request for Medicaid eligibility, was made on April 11, 2005.
[3] The confusing procedural path requiring two hearings before the ALJ resulted in the filing of two separate petitions for judicial review in the Nineteenth Judicial District Court: In Re: Kathryn Wild, Docket No. 528,215, Division "D" and In Re: Kathryn Wild, Docket No. 532,087, Section "8". The suits were consolidated under suit number 528,215 and re-allotted to Division "D" on July 18, 2006.
[4] While we recognize this court's holding in Multi-Care, Inc. v. State of Louisiana, Dept. of Health and Hospitals, 00-2001 (La.App. 1 Cir. 11/9/01), 804 So.2d 673, 675, that the 1997 amendment to LSA-R.S. 49:964 G(6) empowered district courts with the function of fact finding in the administrative context, this does not affect the appellate court's standard of review over district court decisions in the administrative context. See Carpenter, 944 So.2d at 608, n. 2.
[5] The Medicaid Program is part of the federal Social Security Act. 42 U.S.C. § 1396, et seq. The applicable portion of Title 42 of the United States Code dealing with certain transfers of assets is found in Section 1396p.
[6] Effective February 8, 2006, the look-back period for all cases involving revocable trusts was extended to 60 months. 42 USC 1396p(c)(1)(B)(i); MEM I-1720.
[7] Compare a similar situation involving a transfer of ownership of an annuity between spouses that was found to not affect the donor spouse's eligibility for LTC Medicaid benefits. Pacente v. Jindal, 99-0601 (La.App. 4 Cir. 12/29/99), 751 So.2d 343, 347.