984 So.2d 711 (2008)
The DOC'S CLINIC, APMC
v.
STATE of Louisiana, Through the DEPARTMENT OF HEALTH AND HOSPITALS.
No. 2007 CA 0480.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
Rehearing Denied January 17, 2008.
*714 Bruce M. Danner, Madisonville, LA, for Plaintiff/Appellant, The Doc's Clinic, APMC.
Douglas L. Cade Kimberly L. Humbles, Baton Rouge, LA, for Defendant/Appellee, State of Louisiana, through the Department of Health and Hospitals.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
*715 WHIPPLE, J.
The plaintiff, The Doc's Clinic, APMC, appeals from a judgment of the district court, dismissing an original and amended Petition for Judicial Review of Administrative Decision and denying plaintiffs claim for reasonable litigation expenses. The judicial review proceedings dismissed by that judgment arose out of a decision by the State of Louisiana, Department of Health and Hospitals, to recoup alleged Medicaid overpayments following a post payment investigation. For the following reasons, we reverse, render, and remand.

FACTS AND PROCEDURAL HISTORY
The Doc's Clinic, APMC ("Doc's") is a professional medical corporation that became licensed by the State of Louisiana, Department of Health and Hospitals ("DHH") in 1996 to provide healthcare to Medicaid-eligible persons. Since that time, Doc's has operated five medical clinics in the metropolitan New Orleans area and has provided healthcare services almost exclusively to economically disadvantaged persons.
On July 20, 2000, following an investigation by the DHH Program Integrity Unit, DHH notified Doc's of its intent to recoup payments in the amount of $28,432.51 for the concurrent billing of Physicians' Current Procedural Terminology ("CPT") codes 94010, 94060, and 94375.[1] Shortly thereafter, on August 4, 2000, following another investigation by the Surveillance and Utilization Review Section at the UNISYS Corporation,[2] DHH notified Doc's of its intent to recoup an additional $269,393.57 for the alleged improper coding of office visits, billing of medically unnecessary services, and billing of segmented laboratory and diagnostic procedures.[3] An informal discussion was held on September 14, 2000 as a result of DHH's investigations. Thereafter, on October 26, 2000, DHH issued a letter notifying Doc's that the total amount to be recouped as a result of the two investigations was $297,826.08, and that DHH intended to exclude Doc's, along with its owner, Dr. Kent Hickey,[4] and manager, Malcolm H. *716 "Mike" Sutter, III, from the Medical Assistance Program for a period of five years.[5]
Doc's administratively appealed both the recoupment and exclusion orders to the DHH Bureau of Appeals. All three appeals were consolidated, and the case was assigned to Administrative Law Judge Karla Coreil ("ALJ Coreil"). In preliminary proceedings, ALJ Coreil granted summary judgment in favor of DHH as to a small portion of the recoupment amount.[6] The remaining sanctions were adjudicated in a thirteen-day administrative hearing beginning in December 2001 and ending in January 2002. The parties submitted post trial briefs following the conclusion of the hearing, and the case was submitted to ALJ Coreil for decision on February 25, 2002. More than one year later, on March 23, 2003, ALJ Coreil submitted a 155-page proposed decision to former DHH Secretary David W. Hood ("Secretary Hood").[7] ALJ Coreil's proposed decision recommended reversal of the exclusion order and the majority of the remaining recoupment amount.[8] On April 3, 2003, Secretary Hood issued a final decision, wherein he adopted ALJ Coreil's findings of fact, but in large part rejected her conclusions of law. Specifically, although Secretary Hood accepted ALJ Coreil's recommendation to reverse the exclusion order and the $28,432.51 recoupment, he upheld the majority of the remaining recoupment amount.[9]
On May 1, 2003, Doc's filed a Petition for Judicial Review of Administrative Decision docketed as Suit Number 507,132 in the Nineteenth Judicial District Court alleging "irregularities in procedure." Following a hearing on August 2, 2004, District Court Judge Timothy E. Kelley concluded that Secretary Hood acted arbitrarily and capriciously in signing a decision without first reviewing the entire administrative record. Accordingly, pursuant to a written judgment signed on September 1, 2004, Judge Kelley remanded the matter to DHH for rendition of a decision after full review of the record. *717 Doc's sought reversal of the remand order through a writ application and a separate appeal, but this Court declined to disturb the district court's ruling in both filings. See The Doc's Clinic, APMC v. State, ex rel Dept. of Health and Hospitals, XXXX-XXXX (La.App. 1st Cir.9/30/04)(unpublished writ action), writ denied, 2004-2681 (La. 1/7/05), 891 So.2d 690; see also The Doc's Clinic, APMC, et al. v. State, XXXX-XXXX (La.App. 1st Cir.2/10/06) (unpublished opinion), 924 So.2d 514 (table), writ denied, XXXX-XXXX (La.5/26/06), 930 So.2d 25.[10]
Upon remand, DHH assigned the review of the record to Administrative Law Judge Gregory Toney ("ALJ Toney"). Following a review of the record, ALJ Toney prepared a proposed decision that essentially duplicated the prior decision of former Secretary Hood. Current DHH Secretary Frederick Cerise ("Secretary Cerise") adopted ALJ Toney's recommended action on October 4, 2004.[11]
On October 29, 2004, Doc's filed a Petition for Judicial Review of Secretary Cerise's decision in the Nineteenth Judicial District Court, which matter was docketed as Suit Number 505,909. Upon motion of Doc's, and in light of the fact that the administrative proceeding at issue was identical to that previously contemplated in Suit Number 507,132, the matter was transferred to Section 22 of the district court for consideration by Judge Kelley. After the filing of the depositions of Secretary Cerise and ALJ Toney into the record, a hearing was held on November 15, 2006. Following oral argument, Judge Kelley stated that, after a thorough review of the entire administrative record, he found no constitutional violations, actions in excess of DHH's statutory authority, unlawful procedures, errors of law, arbitrary or capricious discretion, or unwarranted exercise of discretion on remand. Additionally, Judge Kelley found that Secretary Cerise's final administrative decision was supported and sustainable by a preponderance of the evidence. Accordingly, Judge Kelley affirmed the final administrative decision dated October 4, *718 2005, and denied Doc's claim for reasonable litigation expenses. A written judgment to that effect was signed on December 18, 2006.
This appeal by Doc's followed. Since the exclusion order and $28,432.51 recoupment have been reversed, this appeal relates exclusively to the August 4, 2000 recoupment. Specifically, Doc's seeks review of the final agency decision to recoup funds paid for the billing of allegedly medically unnecessary services for 10 patients on 197 occasions based on medical records for the recoupment period of February 1, 1996 through April 25, 1997,[12] and the recoupment of funds paid for the billing of allegedly medically unnecessary services for approximately 3,000 patients on 17,003 occasions based on UNISYS billing records for the period of October 1, 1997 through October 15, 1999.[13] Doc's urges this Court to adopt the decision of ALJ Coreil, thereby reversing the final agency decision and adjudging that Doc's is entitled to be reimbursed for all recoupments made. Doc's also seeks reasonable litigation expenses and legal interest.

STANDARD OF REVIEW
A person who is aggrieved by a final decision or order in an adjudicative proceeding is entitled to judicial review in accordance with the procedures of the Louisiana Administrative Procedure Act. Louisiana Revised Statute 49:964(G) states that:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of the evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
Any one of the six bases listed in the statute is sufficient to modify or reverse an agency determination. Blanchard v. Allstate Ins. Co., 99-2460, p. 4 (La.App. 1st Cir.10/18/00), 774 So.2d 1002, 1004, writ denied, XXXX-XXXX (La.3/23/01), 787 So.2d 997.
When reviewing an administrative final decision, the district court functions as an appellate court. Bless Home Health Agency v. Louisiana Dep't of Health and Hosp., 99-0936, p. 4 (La.App. *719 1st Cir.5/22/00), 770 So.2d 780, 783. An aggrieved party may obtain a review of any final judgment of the district court by appeal to the appropriate circuit court of appeal. LSA-R.S. 49:965. On review of the district court's judgment, no deference is owed by the court of appeal to the factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Carpenter v. State. Dep't of Health and Hosp., XXXX-XXXX, p. 6 (La. App. 1st Cir.9/20/06), 944 So.2d 604, 608, writ denied, 2006-2804 (La.1/26/07), 948 So.2d 174. Consequently, this Court will conduct its own independent review of the record and apply the standards of review provided by LSA-R.S. 49:964(G).

ISSUES ON REVIEW
On appeal, Doc's argues that DHH's final administrative decision that the tests and procedures performed and billed by Doc's were not medically necessary was arbitrary and/or capricious and/or characterized by an abuse of discretion. Further, Doc's contends that DHH's findings are not supported or sustainable by a preponderance of the evidence.
In challenging the agency determination that the majority of the procedures billed were not medically necessary, Doc's challenges the review process utilized by DHH, acting through its fiscal intermediary, UNISYS. Registered nurse Margaret McLaurin ("Nurse McLaurin") was the UNISYS Corporation nurse analyst who conducted the post payment review involving Doc's. At the administrative hearing, Nurse McLaurin testified that at the outset of her investigation, she ordered a provider history for the time period of September 1, 1996 through November 30, 1996, which revealed that Doc's routinely ordered up to ten times more procedures than its peers. Thereafter, Nurse McLaurin requested from Doc's the medical records of ten patients under the age of 21, randomly selected as a "scientific sample"[14] by the UNISYS system. Nurse McLaurin stated that she reviewed the medical records of the ten scientific sample patients to determine if the documentation supported the level of care billed, the medical necessity of the procedures ordered, and the coding used. Nurse McLaurin testified that after her own review of the medical records, she submitted the records of five of the ten sample patients to UNISYS Physician Consultant Dr. John Palermo for further review. Dr. Palermo concluded that the documentation did not support the level of care billed and the medical necessity of the procedures performed. Based upon her own review and her collaboration with Dr. Palermo, Nurse McLaurin concluded that on 197 occasions the medical records did not indicate the medical necessity of performing the procedures that were billed.[15]
Nurse McLaurin testified that in addition to reviewing the medical records of *720 the ten scientific sample patients, she ordered and reviewed three special reports related to hearing tests, respiratory studies, and laboratory procedures. With respect to the patients identified in the special reports, Nurse McLaurin reviewed the billing records to determine if there was any connexity between the procedures ordered and the diagnoses. Once again with regard to the billing records, Nurse McLaurin consulted with Dr. Palermo. Based upon her own findings, and in accordance with the recommendation of Dr. Palermo, Nurse McLaurin concluded that on 17,003 occasions, Doc's billed for procedures that were not medically necessary as indicated by their diagnoses. Nurse McLaurin admitted she was also influenced in that decision by the patterns previously observed in her review of the billing reports and medical records of the scientific sample patients.
Nurse McLaurin compiled the results of her investigations and drafted the August 4, 2000 recoupment letter, which was signed by the manager of the UNISYS Surveillance and Utilization Review Section, Paul Davenport. On September 14, 2000, Nurse McLaurin participated in an informal meeting requested by representatives of Doc's. Following that meeting, Nurse McLaurin consulted with another UNISYS physician, Dr. Mahinda Jayasinghe, to obtain a second opinion regarding the procedures for which recoupments were made. Dr. Jayasinghe advised Nurse McLaurin that he would have deemed necessary certain procedures for which recoupment was made. Nevertheless, in October 2000, DHH sent a third recoupment letter confirming the original recoupment amounts in full.
With respect to the review process, Doc's first argues that it was inappropriate for a nurse to make decisions of medical necessity.[16] In arguing that it was inappropriate for a nurse analyst to conduct the review process without physician supervision, Doc's relies in large part on the testimony of Dr. Charles Lucey, the former medical director of UNISYS. At the administrative hearing, Dr. Lucey opined that it is improper for a nurse to overturn a physician's medical necessity determinations during post payment review, because determinations of medical necessity require the expertise and training of a physician. Indeed, Dr. Lucey suggested that the method of post payment review utilized in this case could constitute the unauthorized practice of medicine in violation of the Medical Practice Act, LSA-R.S. 37:1261 et seq. Dr. Lucey explained that although Nurse McLaurin did not stop care from being provided, the result of her denial of coverage or recommendation of recoupment would, in effect, change the way doctors practice medicine and affect the ultimate care available to patients.
Second, Doc's argues that even if nurses are qualified to make determinations of medical necessity, DHH failed to comply with federal Medicaid law in several respects. Citing 42 C.F.R. § 456.5 and 456.6, Doc's submits that DHH "is responsible for establishing a plan for the review by professional health personnel" and to develop and use "written criteria" for evaluating the appropriateness and quality of Medicaid services.[17] Likewise, citing 42 *721 C.F.R. § 440.230(c), Doc's argues that a Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service between otherwise eligible recipients solely because of their "diagnosis, type of illness, or condition." Doc's argues that DHH acted in contravention of federal regulations, has not clearly defined "medical necessity,"[18] and does not have a uniform, written review policy. Doc's argues that in the absence of such policy, it was not adjudged by any standards other than the opinions of the persons conducting the review, which opinions were not substantiated by any written criteria. Doc's further argues that to the extent that DHH has defined medically necessary services as "those services delivered in connection with a suspected or confirmed diagnosis," DHH has violated 42 C.F.R. 440.230(c).
Third, Doc's contends that DHH erred by basing its determinations of medical necessity on billing records alone.[19] Doc's avers that in order to determine medical necessity, DHH must contemplate a number of factors, including patient history, presenting symptoms, environmental conditions, and test results. Doc's argues that without reviewing a patient's complete medical record, such factors are not evident, and accordingly, medical necessity cannot be ruled out.
Fourth, Doc's challenges the electronic claims submission system utilized by UNISYS.[20] *722 As set forth by Doc's, while the manual Health Care Financing Administration ("HCFA") 1500 form allows the submission of up to four diagnoses per patient, the electronic form utilized by UNISYS allows the submission of only one diagnosis. Thus, although Doc's computer program was designed to allow the submission of up to four diagnoses for each procedure billed, in accordance with the instructions for the manual HCFA 1500 form, UNISYS was only capable of receiving one diagnosis. Additionally, Doc's notes that in contrast to the manual form, the electronic system does not allow allocation of individual diagnoses to procedures. On appeal, Doc's argues that the unilateral alteration of the HCFA 1500 form violated federal law and improperly placed the burden on Medicaid providers to select which one of several possible diagnoses best correlated to a given procedure.[21] Doc's further argues that the limitations of the electronic form, coupled with the fact that DHH did not inform its providers of the change,[22] negates the conclusion that UNISYS was proper in its alteration of the electronic HCFA 1500 form.
Lastly, Doc's argues that DHH's actions on remand in this case violated constitutional and statutory law, were in excess of its authority, were made upon unlawful procedure, and/or were affected by other errors of law. Doc's notes that once a sanction is invoked against a provider by DHH, various administrative proceedings are available to the provider, including an administrative hearing. 10 La. Reg. 383, 385 (1978). Specifically, Doc's cites Rule IX, addressing decisions rendered in an administrative appeal proceeding, which provides, in pertinent part:
A. At the conclusion of the hearing, the hearing officer shall take the matter under submission and shall submit to the Secretary of the Department of Health and Human Resources a proposed decision.
B. The proposed decision shall be in writing and shall contain findings of fact, a determination of the issues presented, and an order.
C. The Secretary of the agency may adopt the proposed decision or he may reject the proposed decision and have a decision prepared based upon the record, or he may remand the matter to the hearing officer to take additional evidence. In the latter case, the hearing officer thereafter shall submit to the Secretary a new proposed decision.
D. The decision shall be final upon adoption by the Secretary of the agency subject only to judicial review by the courts.
Doc's contends that under the rules promulgated by DHH and its predecessor, the Department of Health and Human Resources, Secretary Cerise had three options upon remand: (1) affirm the decision of the original administrative law judge; (2) remand the matter for the taking of additional evidence; or (3) otherwise modify *723 or reverse the proposed decision based upon a review of the record.
Doc's argues that the provision under Rule IX for modification or reversal of the proposed decision does not permit a "rehearing" based upon a "cold" review of the record. In asserting this argument, Doc's points out that as to Issue II, ALJ Toney gave little to no weight to the opinions of Dr. Hickey, while giving some weight to the opinions of Nurse McLaurin. Doc's argues that ALJ Toney erred in failing or refusing to consider the expertise of Dr. Hickey.[23] Doc's also contends that ALJ Toney was improperly influenced by the prior opinions of ALJ Coreil and Secretary Hood, which were not part of the original record.[24]
Additionally, Doc's avers that Secretary Cerise's adoption of ALJ Toney's proposed decision was inappropriate. Doc's argues that the actions of Secretary Cerise were particularly egregious in that he admitted during his deposition on January 28, 2005, that he neither reviewed the administrative record nor the prior decisions of ALJ Coreil and Secretary Hood prior to signing the decision dated October 4, 2004. Secretary Cerise also testified that he had no communications with ALJ Toney, who prepared the proposed decision on remand, and only reviewed parts of the decision that had ultimately issued in response to the remand order. Doc's contends that Secretary Cerise accordingly disregarded the instructions of the district court, and this court, i.e., to prepare a decision based on the record.
In light of the numerous alleged errors by DHH in the post payment review process and during the administrative proceedings, Doc's urges this Court to adopt the decision of ALJ Coreil, to reverse the administrative decision dated October 4, 2005, and to render judgment in favor of Doc's for reimbursement, with interest, of the amounts recouped. Doc's also seeks reasonable litigation expenses pursuant to LSA-R.S. 49:965.1.[25] Although litigation expenses are statutorily limited to *724 $7,500.00 per claim, Doc's contends that this appeal arises out of recoupment for multiple procedures, and accordingly, there should be no limit to the amount recoverable except to the extent of its actual expenses.[26]
In opposition to the appeal, DHH argues that Doc's has, in its multiple assignments of error, confused the pertinent issues. The real issue, DHH submits, is not whether the claims submission process utilized by UNISYS was improperly altered or whether the post payment review process employed by it was defective. Instead, DHH argues the real issue is whether Doc's routinely and as a matter of practice billed for procedures without regard to medical necessity, as defined by DHH in accordance with federal Medicaid law.
In arguing that Doc's physicians treated patients without regard to medical necessity, DHH points to the testimony of Dr. Kent Hickey and Dr. Russell Burkett. Drs. Hickey and Burkett testified that the physicians at the General Practice Management Clinic, where they were both formerly employed, regularly met and collaborated, based on their experience, to formulate a list of recommended procedures for their general patient population. The list was admittedly compiled without regard to how such procedures fit into Medicaid's definition of medical necessity. Further, Dr. Hickey testified that he often ran the same group of tests and performed the same procedures on his patients at Doc's as baseline tests regardless of their presenting complaint or initial diagnosis. DHH now argues that such a practice is in violation of Medicaid law in that such treatment or testing does not fit into the definition of medical necessity.[27] DHH argues that even though *725 its method of post payment review admittedly may have been imperfect, one is more likely to make correct determinations of medical necessity if one compares the patient diagnosis to the service billed by the provider than if one simply orders and bills for procedures with no regard for individual diagnoses.
DHH avers that to the extent that a large number of the procedures billed were the result of preventive healthcare screens, any purported defect in the electronic claims submission system or review process utilized by UNISYS is irrelevant. However, to the extent that Doc's cites such defects on appeal, DHH argues that Doc's had the option to submit a separate claim for each procedure so as to ensure payment. DHH further contends that during the time period relevant to this litigation, there was no prohibition under Louisiana law that precluded a registered nurse from making independent medical necessity determinations on post payment review. DHH contends that Nurse McLaurin's decisions had no effect on whether patient care was provided. Additionally, DHH avers that there is no logic to Doc's argument that medical necessity can sometimes be confirmed based upon a review of a billing record, but that necessity cannot be ruled out using that same basis.
DHH argues that given the sheer volume of claims at issue in this case, the analysis of each and every medical record was impossible, and that the post payment review method used by UNISYS should be upheld if it has any rational basis, citing First Nat'l Bank of Abbeville v. Sehrt, 246 So.2d 382, 385 (La.App. 1st Cir. 1971), writ refused, 258 La. 909, 248 So.2d 334 (1971), which held that a presumption of validity attaches to administrative enactments. DHH argues that while it could have used statistical sampling of Doc's medical records and extrapolated its findings to the entire universe of claims, Nurse McLaurin chose to review each individual billing claim. Thus, DHH argues, under these facts, the review process actually favored Doc's, and the sanctions imposed should be upheld.
Finally, DHH contends that its actions on remand were proper and in accordance with the rules and regulations that set out the procedure to be followed in an administrative adjudication before DHH's Bureau of Appeals. DHH argues that the rules and regulations do not contain any specification as to who shall prepare the decision on behalf of the Secretary, or that the preparer have prior experience with Medicaid policy and medical necessity. Instead, Rule IX merely requires the Secretary to have a decision prepared based upon the record. DHH avers that under the rule, it was warranted in reassigning the case to ALJ Toney for preparation of a proposed decision. Likewise, DHH submits that to the extent that Doc's has suggested that it was improper for ALJ Toney to review the prior decisions of ALJ Coreil and Secretary Hood, Doc's has failed to show any real or potential harm as a result of ALJ Toney's review of the prior decisions.
Similarly, with respect to the actions of Secretary Cerise on remand, DHH alleges that there is no requirement under the rules and regulations that he draft the final agency decision or that he even be familiar with the decision so long as it is based on the record. Thus, to the extent that the matter was assigned to ALJ Toney for review of the record and preparation of a proposed decision based thereon, DHH argues that Secretary Cerise's adoption of that decision was justified.
DHH contends that based on the record as a whole, the final agency decision should be affirmed on appeal as supported *726 by a preponderance of the evidence. DHH argues that even if this Court believes that Doc's should have prevailed in the district court, an award of litigation expenses pursuant to LSA-R.S. 49:965.1 is not warranted, because DHH did not act without substantial justification as required by the statute. DHH points out that the DHH Division of Program Integrity is obligated to open an investigation of any Medicaid provider upon receipt of a complaint, and that the review of Doc's billings was initiated as a result of a valid complaint from Bob Patience, the former Section Chief of DHH Program Integrity. DHH avers that once the investigation was initiated, DHH discovered that Doc's was routinely ordering more tests per recipient than other urban Medicaid physician clinics. DHH submits that in this sense, DHH was substantially justified in investigating and sanctioning Doc's, and therefore, reasonable litigation expenses pursuant to LSA-R.S. 49:965.1 are not warranted.[28]

LEGAL ANALYSIS
In considering the respective arguments of the parties on appeal, we first observe that in our view, DHH's actions on remand were arbitrary and capricious and based on improper procedure. Rule IX requires that the Secretary have a decision prepared based upon the record. Despite the remand of the case for that purpose, Secretary Cerise admittedly adopted ALJ Toney's proposed decision without reviewing the administrative record, and without reviewing the proposed decision in its entirety. Notably, Secretary Cerise conceded that he was only superficially familiar with the details of the case when he adopted ALJ Toney's proposed decision.[29] Under these circumstances, we find that the agency's actions on remand were arbitrary and capricious. Thus, we must now consider whether reversal or modification of the agency decision pursuant to LSA-R.S. 49:964(G) is necessary.[30]
In reviewing DHH's decision, we are unable to find any inherent defect in the fact that Nurse McLaurin conducted the post payment review,[31] despite our reservations as to the soundness of such practice where, as here, the practical effect of such a review, in some instances, may be tantamount to a nurse "second-guessing" a doctor's treatment decisions. Nonetheless, at the time of review, there was no statutory provision or internal DHH rule specifically prohibiting post payment review by nurses. Moreover, since that time, the legislature has enacted LSA-R.S. 37:934 to expressly authorize nurses to perform post payment utilization review of *727 claims submitted for reimbursement under the Louisiana Medical Assistance Program, provided that such review is performed under the direction of a licensed physician.[32] Here, Nurse McLaurin's determinations as to medical necessity were not completely unilateral. Instead, following her initial review, Nurse McLaurin consulted to some extent with UNISYS adviser Dr. Palermo regarding the medical necessity of the care that was rendered. Pretermitting whether the number of records reviewed as a "scientific sample" were sufficient, it is undisputed Nurse McLaurin submitted the records of five of the ten scientific sample patients and eleven other detailed billing reports for Dr. Palermo's review. Thereafter, recoupment was not initiated until after Dr. Palermo communicated his findings to Nurse McLaurin, essentially affirming her initial conclusion that there was a pattern of billing for procedures that were medically unnecessary. Thus, we are unable to say that Nurse McLaurin unilaterally made decisions as to medical necessity.
Also, we are unable to find that DHH violated federal law. The Medicaid Act requires participating states to provide qualified individuals with financial assistance in certain specified categories of services, which include: (1) inpatient hospital services; (2) outpatient hospital services; (3) laboratory and x-ray services; (4) nursing facility services, screening services, and family planning services;[33] and (5) physician services. 42 U.S.C. § 1396a(10)(A); 42 U.S.C. § 1396d(a)(1)(5); Beal v. Doe, 432 U.S. 438, 440-441, 97 S.Ct. 2366, 2368-2369, 53 L.Ed.2d 464 (1977).
However, nothing in the Medicaid Act requires states to provide funding for all medical treatment falling within the five general categories. Beal, 432 U.S. at 441, 97 S.Ct. at 2369. Instead, the Act merely requires that a "[s]tate plan for medical assistance must . . . include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . are consistent with the objectives of [the Act]." 42 U.S.C. § 1396a(a)(17). This language confers broad discretion on the states to adopt standards for determining the extent of medical assistance, requiring only that such standards be "reasonable" and "consistent with the objectives of the Act." Beal, 432 U.S. at 444, 97 S.Ct. at 2371. In addition, Medicaid regulations grant states the authority to place appropriate limits on services on the basis of medical necessity or on utilization control procedures. 42 C.F.R. § 440.230(d).
In accordance with federal Medicaid law, DHH has chosen to limit services to those based on medical necessity. Medical necessity is defined in the Medicaid of Louisiana Medical Services Manual, albeit loosely, as "those services delivered in connection with a suspected or confirmed diagnosis." We find that the definition adopted by DHH is adequate to put providers and patients alike on notice of the limitations of services under the state Medicaid program. Also, the limitation sets an appropriate standard of review to *728 be applied by DHH personnel. Thus, we find no merit to the argument that DHH violated 42 C.F.R. § 456.5 and 456.6, which require written criteria for evaluating the appropriateness of Medicaid services.
We likewise find no merit to Doc's contention that, in defining medical necessity, DHH has attempted to limit services based on "diagnosis, type of illness, or condition" in contravention of 42 C.F.R. § 440.230(c). The mere fact that DHH looked at the patients' diagnoses in conjunction with its post payment review of the patient billing records does not, without evidence of intent to deny coverage based on diagnosis, invalidate the review process.[34] The record evidences no intent by DHH to deny coverage on the basis of the kind of medical condition that occasioned the need for services. Rather, Nurse McLaurin and Dr. Palermo testified that they looked at the patient diagnoses specifically to determine whether there was a correlation with the care provided. Thus, we do not find that DHH acted in contravention of the provisions of 42 C.F.R. § 440.230(c).
Nonetheless, we must conclude that the overall post payment review process utilized in this case was tainted. Specifically, we find merit in Doc's contention that UNISYS' electronic claims submission process was flawed. This argument was addressed in the decision of ALJ Coreil as part of her discussion of Issue III, which dealt with whether DHH properly recouped funds paid for the billing of allegedly medically unnecessary services on 17,003 occasions based on UNISYS billing records for a recoupment period of October 1, 1997 through October 15, 1999. In addressing this issue, ALJ Coreil weighed the testimony offered at the administrative hearing regarding the computer systems utilized by both Doc's and UNISYS and relating to the electronic claims submission process.
The parties do not dispute that the electronic claims submission system employed by UNISYS was intended to duplicate the manual HCFA 1500 form. The testimony, however, reveals that the manual form and the electronic system were substantially different.
WebMD[35] employee Karen Raborn, an expert in the field of electronic claims submission, testified at the administrative hearing as to the discrepancies between the manual HCFA 1500 form and the UNISYS system and the incompatibility of the UNISYS system with the billing system used by Doc's. Raborn pointed out that the relevant portions of the manual HCFA 1500 form are boxes 21, 24 and 24-E. Specifically, box 21 of the manual HCFA 1500 form contains four spaces for providers to input diagnoses. Box 24, in turn, relates to service information and contains various columns, including a column for procedure codes. There is a pointer allocation *729 in box 24-E that links individual diagnoses in box 21 to procedures in box 24.
In contrasting the manual form and the electronic system used by UNISYS, Raborn testified that the UNISYS system does not allow more than one diagnosis in box 21 to be transmitted.[36] Further, Raborn testified that the electronic system does not permit allocation of the diagnoses in Box 21 to the procedures in box 24. Raborn opined that in the absence of any allocation feature comparable to the pointer allocation in box 24-E of the manual form, the electronic system rendered box 24 useless.
Raborn further testified that the Doc's billing system complies with the manual HCFA 1500 form in that the Doc's system allows the submission of up to four diagnoses per claim. Also, although the Doc's system does not have a pointer allocation, the system allocated all diagnoses for each procedure. Thus, according to Raborn, the most appropriate diagnosis was always submitted for each procedure.
Based on Raborn's uncontradicted testimony, ALJ Coreil concluded that UNISYS unilaterally altered the electronic HCFA 1500 form and, thus, could not capture the information required by the Physician Services Manual. We agree and adopt ALJ Coreil's findings and conclusions as to this issue. While the Doc's system transmitted up to four diagnoses per patient, the UNISYS system undisputedly was only capable of accepting one diagnosis. Since the majority of the patients had multiple diagnoses, the electronic claims submission system was fatally flawed.
In reaching this conclusion, we reject any suggestion by DHH that Doc's failed to comply with the instructions for box 24-E, which direct the provider to indicate the most appropriate diagnosis for each procedure. Insofar as the UNISYS electronic system omitted any allocation feature for electronic claims, DHH cannot now claim that Doc's failed to allocate the most appropriate diagnoses for the procedures billed. DHH's argument is particularly flawed, given that Doc's computer system submitted all diagnoses for each procedure.
We also reject any argument that Doc's should have submitted each procedure billed via a separate claim. The HCFA 1500 form and DHH policy permit each procedure to be billed separately or for all procedures arising out of a single office visit to be concurrently billed in one claim. Doc's chose to bill for its services using one claim form per office visit in compliance with DHH policy. Doc's should not now be subjected to administrative action on the grounds that, unbeknownst to it and other providers, the UNISYS electronic claims submission process was inconsistent with the manual HCFA 1500 form.
In addition to the problem with the electronic claims submission system, we find merit in Doc's contention that DHH acted improperly in making determinations of medical necessity based on billing records alone. This argument was addressed in the decision of ALJ Coreil as part of her discussion of Issue III. In considering this argument, ALJ Coreil concluded that a review based on billing records alone is not included in Medicaid policy, and absent a review of the medical records, a proper medical necessity determination using the definition of "medically necessary services," *730 as set forth in the Physician Services Manual, is not possible. The defects in a review based on billing records alone, coupled with the fact that UNISYS unilaterally altered the electronic HCFA 1500 form, led ALJ Coreil to recommend that the recoupment based on the billing records should be reversed.[37]
Based on the testimony at the administrative hearing, we agree with ALJ Coreil's conclusion that a review based on billing records alone is insufficient. In particular, Dr. Hickey testified that based on his experience as a physician, the only way to make a firm determination of medical necessity is to look at the original medical record.[38] Similarly, although Nurse McLaurin and Dr. Palermo testified that they were unaware of any policy prohibiting review based on billing records, they both admitted that a review based on billing records had obvious limitations in that the medical records often contain pertinent information regarding the patient and diagnosis that is not otherwise apparent in the billing records. Both Nurse McLaurin and Dr. Palermo admitted at the administrative hearing that upon review of the patient medical records, recoupments had been made, based upon a review of billing records, for procedures that were in actuality medically necessary. Importantly, Nurse McLaurin admitted that she made several mistakes in determining medical necessity and that she was unable to estimate the total number or percentage of her error herein due to the sheer volume of claims at issue in this case.
We also find the testimony of former UNISYS director Dr. Charles Lucey as to this issue particularly insightful. Dr. Lucey testified that while it is possible to determine medical necessity based on a diagnosis, it is not possible to negate necessity solely on that basis. Dr. Lucey testified that it is not possible to conclusively *731 rule out the medical necessity of a procedure without a complete picture as to the patient's history, presenting complaints, and physical symptoms. Dr. Lucey opined that the making of necessity determinations based on billing reports alone is an unsound practice that results in fatally flawed decisions. We agree.
Additionally, we observe that a review based on billing records alone is inconsistent with DHH's own definition of medical necessity. DHH's policy requires only that services be connected with a suspected or confirmed diagnosis. However, given the format used herein, billing records will never indicate a "suspected" diagnosis that was ultimately rejected. Undisputedly, such information is only attainable from a review of the complete medical records.
Considering the definition of medical necessity contained in the Medicaid Services Manual, along with the testimony of the medical experts that the medical records are, at a minimum, helpful and often necessary to make a proper medical necessity determination, we agree with ALJ Coreil that DHH's recoupment of funds based on a review of the billing reports alone cannot stand. Even if Doc's physicians were not cognizant of DHH's definition of medical necessity in providing patient care, that factor alone does not support a conclusion that the treatment provided was unnecessary. By questioning the services while failing to look at the complete picture of patient health, DHH failed to make a proper determination of medical necessity under even its own standards.
Furthermore, we find that ALJ Coreil's findings of fact and conclusions of law as to Issue II, dealing with whether DHH properly recouped funds paid for the billing of allegedly medically unnecessary services on 197 occasions based on medical records from a recoupment period of February 1, 1996 through April 25, 1997, are correct. In addressing this issue, ALJ Coreil identified the individualized procedures ordered for each of the ten patients in the scientific sample and discussed the testimony offered as to the medical necessity of each such procedure. Based on the preponderance of the evidence, ALJ Coreil drew conclusions as to the necessity of each procedure. To the extent recoupments were made for those procedures found to be medically necessary, ALJ Coreil recommended that the recoupments be reversed and that Doc's be reimbursed.
On review, we find that ALJ Coral's conclusions with respect to the scientific sample patients are based on a thorough review of the testimony offered as to the medical necessity of each of the procedures and her findings are clearly supported by the record. In adopting ALJ Coral's recommendation on Issue II, which reduced the recoupment rate from 91% to 18%, we note that Nurse McLaurin admitted she sometimes deferred to the billing records in making medical necessity determinations. Specifically, Nurse McLaurin admitted that if the medical records of the sample patients indicated medical necessity, but the corresponding billing record did not, she then concluded that there was no medical necessity. She testified that she felt the diagnosis on the billing record controlled over the information contained in the medical records. Thus, based on Nurse McLaurin's testimony, it is apparent that her review with respect to the ten scientific sample patients was tainted for the same reasons that we conclude her conclusions and review premised on the billing records alone was skewed.[39]
*732 Following our independent review of the record, we are unable to find that the decision of Secretary Cerise is supported by a preponderance of the evidence insofar as he rejected the conclusions and recommendations of the original hearing officer, ALJ Coreil, with respect to Issues II and III. By upholding recoupments based on a defective review, the decision prejudiced the substantial rights of Doc's to receive payment under Medicaid for the rendition of valid medical services to an otherwise disadvantaged patient population. Therefore, we reverse the decision and adopt the findings and recommendations of ALJ Coreil as to Issues II and III.[40]
We further conclude that because Doc's has been substantially prejudiced by the recoupment, Doc's is entitled to interest in its favor.[41] Doc's has requested interest from the date of the first judicial demand, i.e., May 1, 2003. However, it is not clear from a review of the record if DHH has recouped in full and, if so, when such recoupment was made. We therefore award interest from the date of the filing of the original petition for judicial review of administrative proceedings in Suit No. 507,132, for all 32amounts improperly recouped by DHH as of the date that suit was filed. However, for any amounts later improperly recouped, interest shall accrue from the actual date of recoupment.
Additionally, because we find that DHH acted without substantial justification, we find merit to Doc's contention that it is entitled to statutory litigation expenses. Thus, we reverse the district court's denial of reasonable litigation expenses pursuant to LSA-R.S. 49:965.1. However, in awarding such litigation expenses, we must consider whether LSA-R.S. 49:965.1 was intended to limit the amount of such expenses to $7,500.00 in cases, such as the one at hand, which involve multiple medical necessity determinations. Because the statute provides for an award for reasonable litigation expenses, it is penal in nature. Allen v. La. State Bd. of Dentistry, 603 So.2d 238, 243 (La.App. 4th Cir.1992). It is a well-settled rule of statutory construction that penal statutes must be strictly construed and their provisions shall be given a genuine construction according to the fair import of their words, taken in their usual sense, in connection with the context and with reference to the purpose of the provision. State v. Russland Enterprises, 555 So.2d 1365, 1369 (La.1990). This rule of construction has been specifically applied to administrative law. Gibbs Constr. Co., *733 Inc. v. State Dep't of Labor, 540 So.2d 268, 269 (La.1989).
According to Black's Law Dictionary, the term "claim" refers to the "aggregate of operative facts giving rise to a right enforceable by a court." See Black's Law Dictionary (8th ed.2004). Under that definition, the issue is not whether this case involves multiple medical necessity determinations, but whether such determinations arise out of the same operative facts.
Here, the recoupments were the result of a single complaint by Bob Patience regarding Doc's. Moreover, all of the recoupments at issue on appeal relate to the investigation conducted by the UNISYS Surveillance and Utilization Review Section and arise out of the August 4, 2000 recoupment. Interpreting LSA-R.S. 49:965.1(D) strictly, we conclude that under the plain language of the statute, this appeal involves a single claim. Thus, while we find merit to this claim, we limit the award of expenses to $7,500.00, notwithstanding Doc's argument that this case warrants an award of expenses in excess of that amount.[42]

CONCLUSION
For the above and foregoing reasons, the district court's judgment dated December 18, 2006, affirming the final agency decision of Secretary Cerise dated October 4, 2004, and denying Doc's request for administrative expenses, is reversed. With respect to Issue II, dealing with whether DHH properly recouped funds paid for the billing of allegedly medically unnecessary services on 197 occasions based on medical records from a recoupment period of February 1, 1996 through April 25, 1997, we adopt ALJ Coreil's findings of fact and conclusions of law with respect to the medical necessity of the procedures ordered. Moreover, we specifically adopt ALJ Coreil's recommendation and hereby order that the recoupment be reversed and that reimbursement be made to the provider to the extent said recoupments were made for those procedures, which ALJ Coreil found to be medically necessary.
With respect to Issue III, dealing with whether DHH properly recouped funds paid for the billing of allegedly medically unnecessary services on 17,003 occasions based on UNISYS billing records from a recoupment period of October 1, 1997 through October 15, 1999, we likewise adopt ALJ Coreil's findings of fact and conclusions of law. To the extent that UNISYS unilaterally altered the electronic HCFA 1500 form and could not capture the information required by the Physician Services Manual, and since a proper determination of medical necessity using the definition included in the Physician Services Manual is not possible based on a review of billing records alone, we adopt ALJ Coreil's primary recommendation and hereby order that the recoupment that was based on billing records alone be reversed and that Doc's be reimbursed.
Accordingly, judgment is hereby rendered ordering that Doc's be reimbursed for any recoupments improperly made, in *734 accordance with the foregoing findings and conclusions. We remand this matter to DHH for a determination of the precise amounts due in accordance with ALJ Coreil's findings of fact and conclusions of law, consistent with the views expressed herein, together with interest in favor of Doc's to run from the date of filing of the original petition for judicial review of administrative proceedings in Suit No. 507,132, for all recoupments made as of the date that suit was filed, and from the date of all subsequent recoupments made, if any. We further order that any necessary proceedings be conducted and completed, and these amounts due to Doc's be calculated and entered into the record of these proceedings within 90 days of the date of this opinion.
Judgment is further rendered in favor of Doc's and against DHH for reasonable litigation expenses, pursuant to La. R.S. 49:965.1, in the amount of $7,500.00.[43]
Costs of this appeal in the amount of $1,935.64 are assessed against DHH.
REVERSED, RENDERED, AND REMANDED WITH INSTRUCTIONS.
GUIDRY, J., concurs in the result.
NOTES
[1] The CPT codes that formed the basis of the $28,432.51 recoupment relate to the following pulmonary diagnostic procedures: (1) spirometry with graph; (2) bronchospasm evaluation; and (3) respiratory flow volume loop. In recouping the amounts paid for these procedures, DHH maintained that there was some overlap between procedure codes 94010, 94060, and 94375, and that the concurrent billing of these codes was therefore improper.
[2] The UNISYS Corporation is DHH's fiscal intermediary in connection with the processing of Medicaid claims submitted by authorized health care providers. Pursuant to its contract with the State of Louisiana, UNISYS performs various services relative to the administration of the Medicaid program, including the processing, payment, and review or adjudication of reimbursement claims.
[3] Under DHH's rules and regulations, the Division of Program Integrity may initiate post payment review of services rendered and reimbursement received. If the investigation reveals illegalities, improper billing, violations, abuse, or fraud, sanctions are imposed on the provider. These sanctions include, but are not limited to, withholding of payments, recoupment, and exclusion from the Medicaid Program. Although a hearing is required by due process on attempts to recover overpayments under a Medicaid program, a prerecoupment hearing to recover alleged overpayments need not be afforded a provider, so long as prior notice of recoupment is given and a post action hearing is available. See 16D C.J.S. Constitutional Law § 1996 (2007).
[4] DHH also reported Dr. Hickey to the State Medical Board, but the Board declined to pursue the case following a preliminary investigation.
[5] Doc's submits that in the interim, DHH commenced the recoupments by withholding payments to Doc's for services thereafter performed and billed.
[6] During the hearing on DHH's motion for summary judgment, the parties addressed multiple alleged billing irregularities that were identified during the DHH investigations. One of the issues involved alleged overpayments to Doc's in the amount of $4,705.28 due to improper billing of CPT Codes 80050 and 80058. By judgment dated November 20, 2001, ALJ Coreil granted DHH's motion for summary judgment as to that issue only. Thereafter, Doc's filed a Petition for Judicial Review seeking a reversal of the administrative law judge's decision. Following a hearing in the Nineteenth Judicial District Court, the district court upheld the decision, and this Court affirmed on further appeal. See The Doc's Clinic, APMC v. State, ex rel. Dept. of Health and Hospitals, XXXX-XXXX (La.App. 1st Cir.9/26/03)(unpublished opinion), 855 So.2d 435 (table).
[7] On February 10, 2003, Doc's filed a Petition for Writ of Mandamus in the Nineteenth Judicial District Court, seeking an order compelling ALJ Coreil to issue a proposed decision. Following a hearing on February 21, 2003, the district court issued an order mandating that ALJ Coreil render a proposed decision within thirty days. The district court further ordered that a final decision be issued by DHH within ten days of submission of the administrative law judge's proposed decision.
[8] Although it is not apparent from the face of the proposed decision, DHH submits that ALJ Coreil recommended reversal of all but $362.76 of the remaining recoupment amount.
[9] Although it is not clear from the decision dated April 3, 2003, DHH submits that Secretary Hood's final decision reduced the amount to be recouped by DHH from $297,826.08 to $261,065.33.
[10] On appeal, this Court concluded that although the district court has the authority under La. R.S. 49:964(G) to reverse or modify the agency's decision if it determines that substantial rights have been prejudiced by arbitrary or capricious administrative findings, the district court is not required to do so upon making such a determination. Thus, this Court affirmed the district court's action of remanding the matter to DHH rather than deciding the matter de novo. The Doc's Clinic, APMC, XXXX-XXXX at pp. 4-5.

Judge Guidry dissented from the majority opinion, noting that since the district court specifically found that the decision of Secretary Hood was arbitrary and capricious, he believed La. R.S. 49:964(G) required that the district court either reverse or modify the agency's decision. To hold otherwise, Judge Guidry opined, would give DHH a second opportunity to render a decision, or a second bite at the apple, to the prejudice of Doc's Clinic. The Doc's Clinic, APMC, XXXX-XXXX p. 1 (Guidry, J., dissenting).
[11] The findings of fact contained in ALT Coreil's original proposed decision have been substantially incorporated and adopted in the recommended opinion of ALJ Toney and in the final agency decision issued by Secretary Cerise. However, unlike ALJ Coreil, Secretary Cerise expressed reservations regarding the acceptance of the testimony of Dr. Hickey as an expert in light of his personal and financial involvement in the case. Ultimately, the opinion of Secretary Cerise gave little or no weight to the opinions of Dr. Hickey.

Also, Secretary Cerise took issue with a number of the tests ordered by Doc's, which were found to be medically necessary by ALJ Coreil, explaining that many such tests are in fact not recommended as routine screening measures by published, objective evidence and professional standards of care. Thus, Secretary Cerise stated that his acceptance of the recommendations of ALJ Toney should not be construed as his concurrence as a physician to the medical necessity of these tests.
[12] This recoupment is addressed as Issue II in the final agency decision before this Court on appeal.
[13] This recoupment is addressed as Issue III in the final agency decision before us on appeal. Doc's submits that the most significant monetary issue before this Court is Issue III, which challenges the review that resulted in the recoupment of $264,023.63.
[14] Nurse McLaurin differentiated the sampling used in this proceeding from true extrapolation. Notably, Nurse McLaurin testified that although she has in the past used extrapolation in conjunction with the review of other providers, she did not use that method in this instance.
[15] According to the parties, Nurse McLaurin found 91% of the procedures billed in the "scientific sample" to be medically unnecessary. As a result of admissions of error by both Nurse McLaurin and Dr. Palermo, ALJ Coreil recommended reduction of the denial rate to 18%. Despite these admitted errors, DHH's first decision by Secretary Hood nonetheless substantially rejected ALJ Coreil's recommendations, only reducing the denial rate to 71%. DHH's second decision prepared by ALJ Toney and adopted by Secretary Cerise further reduced the denial rate to 56%.
[16] Nurse McLaurin testified that in undertaking her review, she was not required to defer to the physician consultants in making her determination as to whether billed procedures were medically necessary. She also admitted that she did not consult with a physician as to every procedure for which recoupment was made.
[17] DHH argues that this issue is not properly before this Court, because Doc's did not raise this argument during the original administrative hearing. Nevertheless, since a review of post payment sanctions necessarily requires a finding that the agency complied with federal Medicaid law, we will address this argument in the interests of justice. See Rule 1-3, Uniform Rules of Louisiana Courts of Appeal.
[18] In briefs to this Court, DHH adopts the definition of medical necessity contained in Chapter 15 of the Louisiana Medical Services Manual. Therein, Medicaid of Louisiana defines medically necessary services as "those services delivered in connection with a suspected or confirmed diagnosis." Doc's, however, submits that DHH has not consistently utilized the definition contained in the Medical Services Manual. Doc's notes that in the recoupment letter dated August 4, 2000, Paul Davenport, a manager of the Surveillance and Utilization Review Section at UNISYS, commented as follows regarding medical necessity:

Following is a definition which should help clarify the concept of medical necessity: The determination that a service is reasonably necessary to prevent, diagnose, correct, cure, alleviate or prevent the worsening of conditions that endanger life or cause suffering or pain, or result in illness or infirmity, or threaten to cause or aggravate a handicap or cause physical deformity or malfunction. There must also be no other equally effective, more conservative, or substantially less costly course of treatment available or suitable for the client requesting service. Please note that the previous statement is not a direct quote of our policy but is included to aid in understanding the intent.
Given the discrepancy between the definitions contained in the Louisiana Medical Services Manual and in the recoupment letter, Doc's notes that DHH has failed to clearly define medical necessity.
[19] It is undisputed that no medical records were inspected in conjunction with the review of billing records for the period of October 1, 1997 through October 15, 1999. Likewise, although both the medical and billing records were inspected in conjunction with the "scientific sample," Nurse McLaurin testified that if the medical records indicated medical necessity for a given procedure, but the corresponding billing records did not, then she concluded there was no necessity. Thus, where the billing records and medical records were inconsistent, Nurse McLaurin decided that the billing records controlled.

ALJ Coreil concluded that a review based on billing records alone is not included in Medicaid policy, and absent a review of the medical records, no proper medical necessity determination could possibly be made. Secretary Cerise, by contrast, ultimately concluded that a review of billing records alone is sufficient to make a medical necessity determination under Medicaid policy.
[20] All of the billings at issue were submitted electronically to Medicaid by Doc's.
[21] As to this issue, ALJ Coreil concluded that UNISYS unilaterally altered the electronic HCFA 1500 form and, thus, could not capture the information required by the Physician Services Manual. Secretary Cerise, however, ultimately held that UNISYS acted properly in altering the electronic HCFA 1500 form, and that Doc's failed to follow the instructions for the HCFA 1500 by failing to allocate the most appropriate diagnosis for each procedure.
[22] DHH submitted no evidence that providers who were approved to bill electronically were notified of the limitations of the UNISYS system. Indeed, even Nurse McLaurin, a UNISYS employee, admitted that she was unaware that Doc's could not submit more than one diagnosis per billing.
[23] At the administrative hearing, Dr. Hickey was tendered (and accepted by ALJ Coreil) as an expert in general practice medicine and in the treatment of inner-city urban poor in the New Orleans area. He was also permitted to testify as a fact witness.
[24] Doc's also argues on appeal that ALJ Toney lacked sufficient experience to prepare a proposed decision. Specifically, Doc's points out that ALJ Toney was only employed by the DHH Bureau of Appeals for a total period of approximately three months, and that the first task assigned to him during his tenure of employment for DHH was to prepare a proposed decision in the instant case upon remand. ALJ Toney admitted during his deposition on January 28, 2005, that he had never prepared a proposed decision prior to this case and had absolutely no experience regarding medical necessity determinations like those at issue in the instant case.
[25] Louisiana Revised Statute 49:965.1 provides:

A. When a small business files a petition seeking: (1) relief from the application or enforcement of an agency rule or regulation, (2) judicial review of the validity or applicability of an agency rule, (3) judicial review of an adverse declaratory order or ruling, or (4) judicial review of a final decision or order in an adjudication proceeding, the petition may include a claim against the agency for the recovery of reasonable litigation expenses. If the small business prevails and the court determines that the agency acted without substantial justification, the court may award such expenses, in addition to granting any other appropriate relief.
B. A small business shall be deemed to have prevailed in an action when, in the final disposition, its position with respect to the agency rule or declaratory order or ruling is maintained, or when there is no adjudication, stipulation, or acceptance of liability on its part. However, a small business shall not be deemed to have prevailed, if the action was commenced at the instance of, or on the basis of a complaint by, anyone other than an officer, agent, or employee of the agency and was dismissed by the agency on a finding of no cause for the action or settled without a finding of fault on the part of the small business.
. . . .
D. As used in this Section:
(1) "Reasonable litigation expenses" means any expenses, not exceeding seven thousand five hundred dollars in connection with any one claim, reasonably incurred in opposing or contesting the agency action, including costs and expenses incurred in both the administrative proceeding and the judicial proceeding, fees and expenses of expert or other witnesses, and attorney fees.
(2) "Small business" means a small business as defined by the Small Business Administration, which for purposes of size eligibility or other factors, meets the applicable criteria set forth in 13 Code of Federal Regulations, Part 121, as amended.
[26] In the prior district court proceedings docketed as Suit No. 507,132, Doc's submitted the affidavit of its manager Malcolm H. Sutter, III, certifying that Doc's has annual receipts of less than $5,000,000.00 and has fewer than 500 employees, so as to qualify as a "small business" under the Code of Federal Regulations and LSA-R.S. 49:965.1. Additionally, in that same proceeding, Doc's submitted the affidavit of its attorney, Bruce M. Danner, who certified that he expended approximately 850 hours on that appeal at a rate of $215.00 per hour, which well exceeded the statutory maximum for litigation expenses set forth by La. R.S. 49:965.1.
[27] Although arguing that medical necessity is an individualized determination and cannot be made based on membership in a demographic group, DHH admits there is an exception for early and periodic screening, diagnostic, and treatment services (EPSDT). The Medicaid program provides for reimbursement on a flat fee basis for providers who perform a menu of specific diagnostic procedures for Medicaid-eligible patients under the age of 21. According to DHH, providers who wish to take part in the program must enroll in Louisiana KidMed and use specific KidMed codes when billing. DHH contends that because Doc's was not enrolled in KidMed, the preventive care provided by Doc's was not appropriate.
[28] In asserting this argument, DHH does not contest the assertion by Doc's that it qualifies as a small business, as that term is used in LSA-R.S. 49:965.1.
[29] Secretary Cerise admitted during his deposition that the reservations expressed in the decision dated October 4, 2005, were not based on intimate familiarity with the specific facts of this case, but were rather disclaimers based upon his general knowledge and experience as a physician.
[30] Although this Court previously affirmed the district court's remand of the case to DHH under similar circumstances, we noted in that instance that the district court also had the authority under LSA-R.S. 49:964(G) to reverse or modify the agency's decision. See The Doc's Clinic, APMC, XXXX-XXXX at p. 5. Thus, at this stage of the proceedings, i.e., where the district court has affirmed the agency's final decision following a review of the record, we will now proceed to review the merits of the agency's decision.
[31] There is no dispute that DHH has the right to recoup payments made for unnecessary medical services or that the Division of Program Integrity is empowered to initiate such review.
[32] Louisiana Revised Statute 37:934 was added by Acts 2003, No. 673, § 1, effective August 15, 2003, and now provides:

Nothing in this Part shall prohibit a registered nurse who is properly licensed and recognized by the board from performing prepayment or post-payment utilization review of claims submitted for reimbursement under the Louisiana Medical Assistance Program provided that such review is performed under the direction of a licensed physician.
[33] The statute provides three subcategories of nursing care, one of which is skilled nursing care.
[34] In rejecting the argument that DHH attempted to limit services based on diagnosis, we distinguish those cases involving 42 C.F.R. § 440.230(c) in which states have attempted to provide services only for certain illnesses. See White v. Beal, 555 F.2d 1146 (3rd Cir. 1977) where the court concluded that Pennsylvania's decision to provide eyeglasses for those suffering from eye disease, but not for those with non-pathological eye trouble, violated the regulations both because it discriminated on the basis of a medical disorder and because it was based on a factor not reasonably related to medical need; see also Preterm, Inc. v. Dukakis, 591 F.2d 121 (1st Cir.1979) where the court noted that basing the provision of abortion services on a distinction between life and death situations made their availability turn on "medical condition" rather than on "degree of need."
[35] WebMD is the company that owns and manages the computer billing system used by Doc's.
[36] UNISYS Deputy Project Manager Royce Watts, who testified that the electronic system only allows the input of eight bytes relative to patient diagnoses, corroborated Raborn's testimony as to capacity of the electronic claims submission system and admitted that only one diagnosis code can fit in the designated space.
[37] Alternatively, in the event that the Secretary of DHH found that UNISYS was proper in the alteration of the HCFA 1500 form and that a review of billing records alone was sufficient to make a medical necessity determination under Medicaid policy, ALJ Coreil recommended: (1) that the findings of medical necessity included in the chart at page 30 of her decision be used for the billed diagnosis of health supervision of child or routine health examination and other like diagnoses and that any funds recouped for procedures thus found medically necessary be reimbursed to Doc's; (2) that the opinions of the medical experts, when offered on particular diagnoses, be applied as discussed in ALJ Coreil's analyses of the procedures under Issue II and that funds recouped for procedures thus found medically necessary be reimbursed to Doc's; (3) that any test for which DHH's medical witnesses, including Nurse McLaurin and Dr. Palermo, changed their testimony result in reimbursement to Doc's; and (4) that the medical opinion of Nurse McLaurin be applied, in accordance with ALJ Coreil's legal analysis under Issue II, Patient Elliott, for diagnoses and procedures which were not discussed in the chart beginning on page 30 or under Issue II and that funds recouped for procedures thus found medically necessary be reimbursed to Doc's.
[38] In relying in part on the testimony of Dr. Hickey, we reject the suggestions of ALJ Toney and Secretary Cerise that bias precludes Dr. Hickey from qualifying as an expert witness. To the contrary, this Court has held that the fact that a witness proposed as an expert is a party or an employee of a party does not preclude his qualification as an expert, as any potential bias may be explored on cross-examination. Pelts & Skins Export, Ltd. v. State ex rel. Dep't of Wildlife & Fisheries, 97-2300, p. 4 (La.App. 1st Cir.4/1/99), 735 So.2d 116, 122, writs denied, 99-2036 and 99-2042 (La. 10/29/99), 748 So.2d 1168. Moreover, LSA-R.S. 49:964(G) provides that where the agency has the opportunity to judge the credibility of the witness by first-hand observation of demeanor on the witness stand, due regard shall be given to the agency's determination of credibility issues. Thus, we will give deference to ALJ Coreil's determination that Dr. Hickey was a reliable expert witness.
[39] We are aware that the use of extrapolation or scientific sampling has been widely recognized as a valid method of conducting post payment Medicaid review by state agencies. See Matter of Clin Path, Inc. v. New York State Dep't of Soc. Serv., 193 A.D.2d 1034, 598 N.Y.S.2d 583 (N.Y.A.D. 3 Dept. 1993); see also Lebajo v. Dep't of Pub. Aid, 210 Ill.App.3d 263, 155 Ill.Dec. 70, 569 N.E.2d 70 (1 Dist.1990). Nevertheless, in this case, we find DHH's argument that Medicaid agencies may use extrapolation or scientific sampling to be irrelevant. Specifically, DHH cannot argue that statistical sampling or extrapolation was utilized where Nurse McLaurin admitted that when the billing reports and medical records supported different determinations as to medical necessity, she based her opinion on the individual billing records. Moreover, we are not convinced that the medical records of ten patients constitutes a representative sample where, as here, the matter involved over 17,000 claims.
[40] We recognize that ALJ Coreil offered alternative recommendations as to Issue III. (Evid. Box I, Adm. Hr'g Tr. at 142-143). Specifically, we adopt and incorporate by reference herein her primary recommendation that the recoupment of funds based on billing records alone should be reversed.
[41] Pursuant to La. Const. art. XII, § 10, the state not only waives immunity from suit, but also immunity from liability, which includes legal interest. See Carr v. State through Dep't of Health and Human Resources, 451 So.2d 1282, 1283 (La.App. 1st Cir.1984).
[42] In concluding that reasonable litigation expenses are limited to $7,500.00 for any one claim, we note that LSA-R.S. 49:965.1 was patterned after CAL.CIV.PROC.CODE § 1028.5, Recovery by Small Businesses of Reasonable Litigation Expenses in Opposing Agency Action: Hearing on House Bill 1243 Before the Committee on House and Governmental Affairs. 1982 Leg., Regular Session (Minutes of June 10, 1982), and that the parallel California statutory provision has likewise been interpreted narrowly. See Wang v. Div. of Labor Standards Enforcement, 219 Cal.App.3d 1152, 268 Cal.Rptr. 669, 675 (2 Distr.1990) which held that it was not possible to award additional attorney's fees on appeal, where the trial court had already awarded the respondent the statutory maximum of $7,500.00
[43] See LSA-C.C.P. art. 2164; see also State ex rel Louisiana Riverboat Gaming Com'n v. Louisiana State Police Riverboat Gaming Enforcement Div., 99-2038, p. 6 (La.App. 1st Cir.9/22/00), 768 So.2d 284, 287, writ denied, 00-2926 (La. 1/5/01), 778 So.2d 598 and McSweeney v. Louisiana Bd. of Veterinary Medicine, 600 So.2d 890 (La.App. 1st Cir. 1992).